MORRISON & FOERSTER LLP
Eric M. Acker (CA Bar No. 135805)
*eacker@mofo.com*
Krista S. deBoer (CA Bar No. 288842)
*kdeboer@mofo.com*
12531 High Bluff Drive, Suite 200
San Diego, CA 92130-3588
Telephone:    858.720.5109
Facsimile:    858.720.5125

AMERICAN IMMIGRATION COUNCIL
Michelle Lapointe (DC Bar No. 90032063)
*mlapointe@immcouncil.org*
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Telephone:    202.507.7523
Facsimile:    202.742.5619

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy* (NY Bar No. 2860740)
*bazmy@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    212.614.6464
Facsimile:    212.614.6499

*Additional Attorneys for Plaintiffs Listed on Next Page*

CENTER FOR GENDER AND REFUGEE STUDIES
Melissa Crow
(DC Bar No. 453487)
*crowmelissa@uclawsf.edu*
1121 14th Street, NW, Suite 200
Washington, DC 20005
Telephone:    202.355.4471
Facsimile:    415.581.8824

DEMOCRACY FORWARD FOUNDATION
Brian Netter (DC Bar No. 979362)
*bnetter@democracyforward.org*
P.O. Box 34553
Washington, DC 20043
Telephone:    202.448.9090
Facsimile:    202.796.4426

* *pro hac vice forthcoming*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-01501-RBM-BLM<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Hon. Ruth Bermudez Montenegro<br>Hearing Date: July 28, 2025<br>Courtroom: 5B<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

MORRISON & FOERSTER LLP
Robert W. Manoso
(DC Bar No. 426323)
*rmanoso@mofo.com*
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone:  202.887.1555
Facsimile:  202.887.0763

AMERICAN IMMIGRATION COUNCIL
Rebecca Cassler (DC Bar No. 90017398)
*rcassler@immcouncil.org*
Suchita Mathur (DC Bar No. 90013156)
*smathur@immcouncil.org*
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Telephone:  202.507.7523
Facsimile:  202.742.5619

CENTER FOR CONSTITUTIONAL RIGHTS
Angelo Guisado* (NY Bar No. 5182688)
*aguisado@ccrjustice.org*
Adina Marx-Arpadi
(NY Bar No 6019335)
*amarxarpadi@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone:  212.614.6464
Facsimile:  212.614.6499

CENTER FOR GENDER AND REFUGEE STUDIES
Blaine Bookey (CA Bar No. 267596)
*bookeybl@uclawsf.edu*
Peter Habib (CA Bar No. 359646)
*habibpeter@uclawsf.edu*
200 McAllister Street
San Francisco, CA 94102
Telephone:  415.565.4877
Facsimile:  415.581.8824

CENTER FOR GENDER AND REFUGEE STUDIES
Robert Pauw (WA Bar No. 13613)
*rpauw@ghp-law.net*
c/o GIBBS HOUSTON PAUW
1000 Second Avenue, Suite 1600
Seattle, WA 98104
Telephone:  206.682.1080
Facsimile:  206.689.2270

DEMOCRACY FORWARD FOUNDATION
Sarah M. Rich (GA Bar No. 281985)
*srich@democracyforward.org*
Adnan Perwez (DC Bar No. 27532)
*aperwez@democracyforward.org*
P.O. Box 34553
Washington, DC 20043
Telephone:  202.448.9090
Facsimile:  202.796.4426

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................. 1

II. FACTS COMMON TO THE PUTATIVE CLASS AND SUBCLASS ......... 3

    A. On Inauguration Day, Defendants Canceled All Pending CBP One Appointments and Shut Down Access to Asylum at Ports of Entry Along the Southern Border. ............................................... 3

    B. Defendants' Conduct Has Irreparably Harmed and Continues to Irreparably Harm Individual Plaintiffs, the Asylum Class, and the CBP One Subclass ............................................................... 5

        1. Asylum Class Members Have Been Unlawfully Denied Access to the Asylum Process. ...................................... 5

        2. Pursuant to Defendant's Instructions, Members of the CBP One Subclass Obtained CBP One Appointments, Which Defendants Canceled at the Eleventh Hour. ............... 6

        3. Asylum Class Members Face a Myriad of Harms in Mexico, Including Violence, Torture, Kidnapping, and Discrimination. ............................................................. 7

III. LEGAL ARGUMENT .................................................................... 11

    A. Plaintiffs Satisfy the Requirements of Rule 23(a). ........................ 11

        1. The Proposed Class and Subclass Are so Numerous that Joinder Is Impracticable. ......................................... 12

        2. Individual Plaintiffs' Claims Present Common Questions of Law and Fact. .................................................. 14

        3. Individual Plaintiffs' Claims Are Typical of the Claims of the Proposed Class and Subclass. ................................. 17

        4. Individual Plaintiffs Will Fairly and Adequately Protect the Interests of the Proposed Class and Subclass. .................. 18

    B. Plaintiffs Satisfy the Requirements of Rule 23(b)(2). ..................... 21

IV. CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. McAleenan*,
423 F. Supp. 3d 848 (S.D. Cal. 2019) ...........................................................*passim*

*Al Otro Lado v. Wolf*,
336 F.R.D. 494 (S.D. Cal. 2020) .................................................................*passim*

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ................................................................................ 12

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ................................................................................ 15

*Arnott v. U.S. Citizenship & Immigration Servs.*,
290 F.R.D. 579 (C.D. Cal. 2012) ......................................................................... 18

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) .......................................................................... 12

*Bloom v. City of San Diego*,
No. 3:17-cv-02324-AJB-MSB, 2021 WL 8053533 (S.D. Cal. June
8, 2021) ................................................................................................................. 15

*Chhoeun v. Marin*,
No. SACV 17-01898-CJC(GJSx), 2018 WL 6265014 (C.D. Cal.
Aug. 14, 2018) ...................................................................................................... 15

*In re Facebook, Inc., PPC Adver. Litig.*,
282 F.R.D. 446 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v.
Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) .............................................. 12

*Gomez v. Rossi Concrete, Inc.*,
270 F.R.D. 579 (S.D. Cal. 2010) .......................................................................... 12

*Gonzalez v. U.S. Immigration & Customs Enforcement*,
975 F.3d 788 (9th Cir. 2020) ................................................................................ 12

*Inland Empire - Immigrant Youth Collective v. Nielsen*,
No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *9 (C.D.
Cal. Feb. 26, 2018) ............................................................................................... 15

*Johns v. Bayer Corp.*,
  280 F.R.D. 551 (S.D. Cal. 2012).................................................................. 13

*Lyon v. U.S. Immigration & Customs Enforcement*,
  308 F.R.D. 203 (N.D. Cal. 2015).................................................................. 22

*Ms. L. v. U.S. Immigration and Customs Enforcement*,
  331 F.R.D. 529 (S.D. Cal. 2018)..........................................................*passim*

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)............................................................... 16, 17

*Rosas v. Baca*,
  No. CV 12-00428 DDP, 2012 WL 2061694 (C.D. Cal. June 7,
  2012).............................................................................................................. 15

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018)........................................................................ 11

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ..................................................................................... 11

*Sueoka v. United States*,
  101 F. App'x 649 (9th Cir. 2004).................................................................. 13

*Unknown Parties v. Johnson*,
  163 F. Supp. 3d 630 (D. Ariz. 2016)............................................................ 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 14, 21

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998)......................................................... 12, 21, 22

*Westways World Travel, Inc. v. AMR Corp.*,
  218 F.R.D. 223 (C.D. Cal. 2003) .................................................................. 21

**Statutes**

8 U.S.C. § 1158............................................................................................... 4

8 U.S.C. § 1182............................................................................................... 4

8 U.S.C. § 1185............................................................................................... 4

1

2

**Other Authorities**

3

2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §
4     4:28 (6th ed. 2023) ................................................................................... 22

5

7A Mary Kay Kane, *Federal Practice & Procedure* § 1768 (4th ed.
6     2023) ..................................................................................................... 18

7

90 Fed. Reg. 8333 (Jan. 20, 2025) ............................................................ 1, 4

8

90 Fed. Reg. 8467 (Jan. 20, 2025) ................................................................. 4

9

Fed. R. Civ. P. 23 .............................................................................. *passim*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

On January 20, 2025, Defendants unlawfully blocked access to the U.S. asylum process at Class A ports of entry on the U.S.-Mexico border ("POEs") and canceled all pending CBP One appointments. Defendants' actions are preventing Individual Plaintiffs and all similarly situated individuals from exercising their shared statutory right to seek asylum in the United States and leaving them stranded permanently in Mexico, where they face an ongoing risk of kidnapping, murder, torture, rape, and other targeted violence.

Individual Plaintiffs Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe, Jean Doe, Rous Doe, Diana Doe, Nikolai Zolotov, Anahi Doe, and Dragon Doe (collectively, "Individual Plaintiffs"), alongside Organizational Plaintiffs Al Otro Lado, Inc. ("AOL") and Haitian Bridge Alliance ("HBA"),[1] seek certification of a class consisting of:

> All noncitizens who, on or after January 20, 2025, have sought or will seek to present themselves at a Class A POE on the U.S.-Mexico border to seek asylum; who were or will be prevented from accessing the U.S. asylum process by or at the direction of Defendants based on the Proclamation[2] or the Asylum Shutdown Policy[3]; who continue to seek access to the U.S. asylum process; and who are not physically present in the United States.

("Asylum Class").

Further, Individual Plaintiffs Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe, Jean Doe, and Rous Doe (collectively, "CBP One Individual Plaintiffs") seek certification of a subclass consisting of:

> All noncitizens who received appointments through the CBP One app to present themselves at a Class A POE on the U.S.-Mexico border; whose appointments were canceled by Defendants on January 20, 2025; who continue to seek access to the U.S. asylum process; and who are

[1] Individual Plaintiffs and Organizational Plaintiffs are collectively referred to herein as "Plaintiffs."

[2] "Proclamation" refers to Proclamation No. 10888, 90 Fed. Reg. 8333 (Jan. 20, 2025).

[3] "Asylum Shutdown Policy" refers to Defendants' decisions to effectively close southern border POEs to people seeking asylum, as defined by ECF No. 1 at ¶ 13.

not physically present in the United States.

("CBP One Subclass"). Plaintiffs easily meet the requirements of Rules 23(a) and 23(b)(2) as to the putative class and subclass.

*First*, the proposed class and subclass exceed the numerosity requirement. The CBP One Subclass alone includes at least 30,000 people who are geographically dispersed along the U.S.-Mexico border, and the Asylum Class is even larger, making joinder in a single proceeding impractical.

*Second*, all putative class and subclass members assert a common set of legal claims based on a common nucleus of operative facts. Questions capable of common proof for both the class and subclass include whether Defendants unlawfully prevented the class members from presenting themselves at a POE to seek asylum and whether Defendants' actions violate the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and/or are ultra vires. For the CBP One Subclass, questions capable of common proof include whether Defendants' decision to cancel CBP One appointments ("CBP One Cancellation") was arbitrary and capricious or otherwise violated the APA.

*Third*, all Individual Plaintiffs assert claims that are typical of the proposed class and, where relevant, the proposed subclass, including violations of the INA and the APA, and the ultra vires nature of Defendants' actions.

*Fourth*, the Individual Plaintiffs will fairly and adequately protect the interests of both the proposed class and subclass. They are represented by qualified counsel with extensive experience in class actions and complex litigation, including challenges to Defendants' immigration policies, who have dedicated significant resources to litigating this matter. Moreover, none of the Individual Plaintiffs have antagonistic or conflicting interests.

*Finally*, Plaintiffs seek relief that will provide a complete remedy for all proposed class and subclass members: restoration of access to the U.S. asylum process as guaranteed by law.

## II.    FACTS COMMON TO THE PUTATIVE CLASS AND SUBCLASS

Individual Plaintiffs and proposed class members' claims are premised on a simple, cohesive set of facts that are subject to common proof. Following Defendant Trump's inauguration, Defendants illegally shut down the asylum process at POEs on the U.S.-Mexico border. Defendants also canceled all pending CBP One appointments and CBP One's scheduling functionality. As a result of Defendants' unlawful actions, Individual Plaintiffs and proposed class members have experienced and continue to experience irreparable harm.

### A.    On Inauguration Day, Defendants Canceled All Pending CBP One Appointments and Shut Down Access to Asylum at Ports of Entry Along the Southern Border.

At noon on January 20, 2025, Defendants abruptly canceled some 30,000 pending CBP One appointments that individuals waiting in Mexico had secured to present themselves at POEs to access the U.S. asylum process. *E.g.*, Ex. A, Maria Doe Decl. ¶ 11; Ex. B, Rous Doe Decl. ¶ 16; Ex. C, Fernando Doe Decl. ¶¶ 14–15.[4] At the same time, Defendants began turning away asylum seekers with CBP One appointments who presented themselves at POEs on their designated appointment date and time. *E.g.*, Ex. D, Jean Doe Decl. ¶¶ 13–14; Ex. E, Eduardo Doe Decl. ¶¶ 9–11. Shortly thereafter, CBP posted an announcement on its website indicating that, as of January 20, 2025, all pending CBP One appointments had been canceled and the CBP One scheduling functionality was no longer available.[5]

Later that evening, Defendant Trump issued the "Securing Our Borders" executive order (the "Executive Order") directing the Secretary of Homeland Security to stop using CBP One "as a method of paroling or facilitating the entry of

---

[4] Exhibits citations refer to the contemporaneously-filed Declaration of Eric M. Acker in Support of Plaintiffs' Motion for Class Certification and Motion to Proceed Pseudonymously.

[5] *CBP One^{TM} Mobile Application*, U.S. Customs & Border Protection, https://web.archive.org/web/20250120180218/https://www.cbp.gov/about/mobile-apps-directory/cbpone (archived Jan. 20, 2025).

otherwise inadmissible [noncitizens] into the United States." 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025). Defendants' decision to cancel scheduled CBP One appointments and remove the app's scheduling functionality effectively eliminated the only method that had been available to noncitizens to seek asylum at the U.S.-Mexico border since May 2023. *See* Ex. L, Laura St. John Decl. ("FIRRP Decl.") ¶ 8; Ex. M, Jennifer Babaie Decl. ("Las Americas Decl.") ¶ 12; Ex. V, Tracey Horan Decl. ("KBI Decl.") ¶¶ 14, 21–23.

The same evening, Defendant Trump issued the Proclamation. The Proclamation vaguely asserts that there is an "invasion" at the Southern border, with no definition of what that means. Invoking INA §§ 212(f) and 215(a)(1), 8 U.S.C. §§ 1182(f), 1185(a)(1), the Proclamation indefinitely "suspend[s] the physical entry" of noncitizens "engaged in the invasion" or who "fail[,] before entering the United States, to provide Federal officials with sufficient medical information and reliable criminal history and background information as to enable fulfillment of the requirements of" 8 U.S.C. § 1182(a)(1)–(3) on or after January 20, 2025. 90 Fed. Reg. 8335 (Jan. 20, 2025). Relying on the same statutory provisions, the Proclamation also indefinitely "restrict[s noncitizens'] access to provisions of the INA that would permit their continued presence in the United States, including, but not limited to," 8 U.S.C. § 1158, the right to apply for asylum. *Id.*

Subsequently, CBP issued written guidance applicable to the CBP Office of Field Operations, which operates POEs. The guidance implements the documentation requirements under Section 3 of the Proclamation that purport to fulfill the requirements of 8 U.S.C. § 1182(a)(1)–(3) and memorializes the Asylum Shutdown Policy. *See* ECF No. 1 at Ex. A, USA00022-33. The guidance states that noncitizens subject to the Proclamation "shall not be permitted to cross the international boundary" for inspection at POEs, even if they "claim or manifest a fear at the international boundary line." *Id.* at USA00024.

**B.** **Defendants' Conduct Has Irreparably Harmed and Continues to Irreparably Harm Individual Plaintiffs, the Asylum Class, and the CBP One Subclass.**

**1.** **Asylum Class Members Have Been Unlawfully Denied Access to the Asylum Process.**

On January 20, Individual Plaintiffs and thousands of members of the proposed Asylum Class had been waiting in Mexico for an opportunity to present themselves at a POE to seek asylum.[6] The Proclamation, Asylum Shutdown Policy, and CBP One Cancellation deprived Individual Plaintiffs and those similarly situated of their statutory right to seek asylum and left them stranded in Mexico under precarious conditions. Ex. A, Maria Doe Decl. ¶¶ 10–13; Ex. B, Rous Doe Decl. ¶¶ 16, 20–21; Ex. C, Fernando Doe Decl. ¶¶ 16–18; Ex. D, Jean Doe Decl. ¶¶ 13–15; Ex. E, Eduardo Doe Decl. ¶¶ 11–14; Ex. F, Dragon Doe Decl. ¶¶ 10–12; Ex. G, Anahi Doe Decl. ¶¶ 10–12; Ex. H, Ali Doe Decl. ¶¶ 10–12; Ex. I, Jessica Doe Decl. ¶¶ 15–19; Ex. J, Diana Doe Decl. ¶¶ 9–11; Ex. K, Nikolai Zolotov Decl. ¶¶ 8–13.[7]

Like the Individual Plaintiffs, members of the proposed Asylum Class had been waiting, often for months, for the opportunity to present themselves at a POE to access the U.S. asylum process. *E.g.*, Ex. K, Nikolai Zolotov Decl. ¶¶ 8–10 (waiting in Mexico since March 21, 2024); Ex. J, Diana Doe Decl. ¶¶ 8–9 (waiting in Mexico since March 2024); Ex. I, Jessica Doe Decl. ¶¶ 12–13, 15 (waiting in Mexico since June 19, 2024); Ex. F, Dragon Doe Decl. ¶ 8 (waiting in Mexico since November 20, 2024). Due to the Proclamation and the Asylum Shutdown Policy, the Individual Plaintiffs and Asylum Class members have no hope of accessing the U.S. asylum

---

[6] *See* Camilo Montoya-Galvez, *About 270,000 migrants waiting to enter U.S. through app Trump has vowed to end, estimates show*, CBS News (Jan. 19, 2025), https://www.cbsnews.com/news/270000-migrants-waiting-to-enter-u-s-through-cbp-one-app-trump-has-vowed-to-end/.

[7] *See* Julie Watson & Megan Janetsky, *Migrants stranded when thousands of appointments to enter the US are canceled as Trump takes office*, AP News (Jan. 20, 2025), https://apnews.com/article/trump-immigration-cbp-one-border-app-652854b5f2a4e6ccd6ee2ccc729cbb55.

process at a POE absent action from this Court.

<strong>2.  Pursuant to Defendant's Instructions, Members of the CBP
One Subclass Obtained CBP One Appointments, Which
Defendants Canceled at the Eleventh Hour.</strong>

Approximately 30,000 of those waiting in Mexico on January 20, including
Individual Plaintiffs Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe,
Jean Doe, Rous Doe, and the rest of the CBP One Subclass, had obtained CBP One
appointments pursuant to Defendants' instructions.[8] Those appointments were
scheduled to occur between January 20, 2025 and February 2025. *E.g.*, Ex. A, Maria
Doe Decl. ¶ 11 (appointment scheduled for Feb. 9, 2025); Ex. B, Rous Doe Decl. ¶
13 (Jan. 23, 2025); Ex. C, Fernando Doe Decl. ¶ 14 (Jan. 25, 2025); Ex. D, Jean Doe
Decl. ¶ 13 (Jan. 20, 2025); Ex. E, Eduardo Doe Decl. ¶ 9 (Jan. 21, 2025); Ex. H, Ali
Doe Decl. ¶ 10 (Jan. 23, 2025); Ex. I, Jessica Doe Decl. ¶ 15 (Feb. 9, 2025). In
reliance on Defendants' explicit representations that they could present themselves
at the designated POE on the date and time of their CBP One appointments to seek
asylum, CBP One Subclass members expended significant sums of money and risked
increased exposure to physical harm to travel to the border as their appointments
approached. *E.g.*, Ex. B, Rous Doe Decl. ¶¶ 14–17 (kidnapped on her way to CBP
One appointment in Nogales); Ex. C, Fernando Doe Decl. ¶¶ 14–15 (spent all his
funds paying for extortion fees, release from kidnappers, and travel to Nogales for
CBP One appointment); Ex. H, Ali Decl. ¶ 10 (spent 9,000 Mexican pesos,
approximately $450, to travel to Nogales for CBP One appointment).

Despite CBP One Subclass members' reliance on the CBP One app and
Defendants' representations related thereto, Defendants canceled their
appointments—without notice or explanation—and provided no alternate method for

---

[8] *See* Thomas Graham, *US asylum seekers in despair after Trump cancels CBP One
app: 'Start from zero again*,*'* The Guardian (Jan. 23, 2025),
https://www.theguardian.com/us-news/2025/jan/23/trump-cbp-one-app-canceled-
mexico ("Roughly 30,000 appointments that had already been scheduled also have
been canceled.").

accessing the U.S. asylum process. *E.g.*, Ex. M, Las Americas Decl. ¶ 14 ("[T]he most common sentiment expressed, even beyond their widespread fear, is a profound sense of betrayal: asylum seekers did everything possible to follow the U.S. government's complex and often unfair procedural hurdles to apply for asylum in the way the government asked them to . . . .").

### 3. Asylum Class Members Face a Myriad of Harms in Mexico, Including Violence, Torture, Kidnapping, and Discrimination.

As a result of Defendants' actions, Individual Plaintiffs and proposed class members face a persistent threat of violence in Mexico. For example, Maria Doe suffered brutal beatings and continues to be relentlessly pursued by a Mexican cartel such that she and her husband rarely venture out of the shelter where they live, have changed their phone numbers, and do not make contact with family or friends. Ex. A, Maria Doe Decl. ¶¶ 9–12. Eduardo Doe, who was previously kidnapped and tortured by members of a Mexican cartel, fears that the same thing could happen again. Ex. E ¶¶ 8–9, 12. Other Individual Plaintiffs face similarly harrowing risks while stranded in Mexico, emblematic of the experiences of other class members. *E.g.*, Ex. B, Rous Doe Decl. ¶¶ 14–17 (kidnapped and held hostage for seven weeks); Ex. C, Fernando Doe Decl. ¶¶ 12, 16, 19 (after advocating against the Venezuelan regime, masked men in Mexico with possible links to narco-trafficking syndicates and Maduro threatened him with photographs of dead bodies; he faced extortion, kidnapping, severe beatings, and nearly died from internal organ damage); Ex. I, Jessica Doe Decl. ¶¶ 14 (suffered beatings and extreme food deprivation after being kidnapped by human traffickers); Ex. K, Nikolai Zolotov Decl. ¶ 12 (faced threats and harassment, fears being in public, and witnessed cartel violence).

The dangers that the Individual Plaintiffs face are consistent with public reports of the dangers to migrants in Mexico. Civil society organizations have documented widespread risks of kidnapping, extortion, and violence against migrants in Mexico. Ex. O, José Alberto Argüelles Aviles Decl. ("AAMX Decl.") ¶ 14 (asylum seekers

CASE NO.: 3:25-CV-01501-RBM-BLM
PLAINTIFFS' MPA ISO MOTION FOR
CLASS CERTIFICATION

in Mexico "experience extortion, kidnappings, disappearances, swindles and fraud, and sexual and gender-based violence."), ¶ 20 ("[Asylum seekers] face severe deprivations of their fundamental rights and have been subject to untold violence at the hands of cartels and other organized crime."); Ex. L, FIRRP Decl. ¶ 11 (families experience extortion and kidnapping); Ex. M, Las Americas Decl. ¶ 12 (migrants "are routinely kidnapped, arrested or detained by Mexican police and organized criminal groups"); Ex. V, KBI Decl. ¶ 13 (78% of migrants arriving at Kino Border Initiative's Migrant Outreach Center in 2024 reported that violence was their primary reason for migration); Ex. P, Sophia Genovese Decl. ("NMILC Decl.") ¶¶ 11–13, 15–16, 18 (migrants face violence and extortion); Ex. Q, Nicole Elizabeth Ramos Decl. ("AOL Decl.") ¶ 19 ("[C]lients in Mexico frequently report facing rape, kidnapping, extortion, and other forms of violence on a regular basis."); Ex. U, Guerline Jozef Decl. ("HBA Decl.") ¶¶ 13–14 (Community of asylum seekers HBA serves in Mexico "routinely face violence and discrimination from criminal organizations and local authorities and are often subject to robbery, rape, and physical assault.").

Human Rights First has tracked reports of over 2,500 asylum seekers and other migrants who survived kidnapping, murder, torture, rape, and other serious harms while they were stranded in Mexico. *See* Ex. R, Human Rights First, at 136. Moreover, the U.S. State Department has recognized that armed groups frequently limit the movements of migrants within Mexico and that human smuggling organizations hold significant power throughout the country. *See, e.g.*, Ex. S, U.S. Department of State's Mexico Travel Advisory at 190. People seeking asylum from countries other than Mexico face threats of deportation back to their persecutors in their home countries, while asylum seekers from Mexico are forced to remain in the country where they face persecution. *E.g.*, Ex. K, Nikolai Zolotov Decl. ¶ 11 (fears Mexican officials who could detain or deport him); Ex. U, HBA Decl. ¶ 10 ("Black migrants report to HBA that they now fear approaching U.S. ports of entry without a CBP One appointment because of ubiquitous stories of INM [*Instituto Nacional de*

*Migración*, the Mexican immigration agency] or CBP harassment, arrest, relocation, deportation, or worse."). They also face Mexican military, law enforcement, and immigration officials who are hostile to their presence in the country and engage in extortion, violence, and arbitrary detention. *E.g.*, Ex. E, Eduardo Doe Decl. ¶ 12 (fears approaching a port of entry due to Mexican border officials detaining people and sending them to southern Mexico where the risk of kidnapping is high); Ex. Q, AOL Decl. ¶ 25 (AOL's clients in Mexico experience "violence at the hands of . . . Mexican officials"); *see also* Ex. T, Hope Border Institute/Jesuit Refugee Service Mexico, at 230 (noting Mexican authorities' involvement in 30% of kidnapping cases surveyed).

In addition to these dangers, Individual Plaintiffs and class members must endure pervasive discrimination and dire economic straits. *E.g.*, Ex. B, Rous Doe Decl. ¶ 21 (finding a job as a trans woman in Mexico is "almost impossible"); Ex. C, Fernando Doe Decl. ¶ 18 (can barely afford food and pay for rent); Ex. E, Eduardo Doe Decl. ¶ 13 (struggling to survive because he is paid less than half of what his co-workers receive due to migrant status); Ex. G, Anahi Doe Decl. ¶ 12 (as a transgender woman in Mexico, lives in constant fear and has suffered discrimination in seeking employment); Ex. H, Ali Doe Decl. ¶ 12 (feels unsafe in Mexico due to lack of support); Ex. I, Jessica Doe Decl. ¶ 18 (barely makes enough money to survive); Ex. K, Nikolai Zolotov Decl. ¶ 13 (struggling both emotionally and financially; unable to work due to lack of legal status in Mexico and lack of Spanish proficiency); Ex. Q, AOL Decl. ¶ 19 ("[M]any work in jobs where they receive far below the minimum wage, endure conditions that are exploitative and unsafe, and face housing and food insecurity"); Ex. U, HBA Decl. ¶¶ 13–14 (detailing economic harms, dire health risks, and discrimination against Black migrants).

The persistent, credible threats to their personal security also make it extremely difficult for non-Mexican Individual Plaintiffs and members of the proposed Asylum Class to access the Mexican asylum system. Ex. Q, AOL Decl. ¶¶ 17–20 (asylum

seekers forced to wait in Mexico "face grave dangers and live under precarious
conditions"); Ex. B, Rous Doe Decl. ¶ 20 ("I do not want to stay in Mexico because
I am afraid of being kidnapped again or suffering more violence for being a trans
woman."); Ex. C, Fernando Doe Decl. ¶ 18 ("I cannot hope for security in a place
where I am not safe at all."); Ex. J, Diana Doe Decl. ¶ 10 (her partner was assaulted
in Mexico and she is "scared to even go out in the street").

Moreover, Mexico has a strict 30-day deadline to file an asylum claim;
securing an exception to that deadline is nearly impossible to overcome, particularly
without a lawyer. At the same time, most people seeking asylum in Mexico lack
counsel. Ex. O, AAMX Decl. ¶¶ 5–8 (noting the 30-day deadline and explaining the
need for representation for asylum seekers in Mexico "far outstrips capacity"). The
30-day deadline may be excused for "good cause," but whether good cause exists is
at the discretion of COMAR, the Mexican asylum agency. *Id.* ¶ 6. COMAR has made
clear that missing the deadline because a person intended to apply for asylum in the
United States through CBP One does not amount to good cause. *Id.*

Most non-Mexican Individual Plaintiffs and class members already in Mexico
missed the 30-day deadline to apply for asylum there when they relied on the promise
of access to the U.S. asylum process through a CBP One appointment. *E.g.*, Ex. D,
Jean Doe Decl. ¶ 12 (missed the 30-day deadline because a COMAR official told him
he could not apply for asylum in Mexico while waiting for a CBP One appointment);
Ex. U, HBA Decl. ¶ 9 ("[I]ndividuals, relying on the promise of access to the U.S.
asylum process, have long since bypassed Mexico's 30-day asylum application
deadline and are currently stuck in Mexico"). They are now likely ineligible for such
relief. *See* Ex. Q, AOL Decl. ¶ 18 ("If an asylum seeker applies late and their
justification for missing the deadline is deemed insufficient, they risk deportation.").

All Individual Plaintiffs are now stranded in Mexico in legal limbo, unable to
return home for fear of persecution and deprived of access to asylum in both the
United States and Mexico.

## III.   LEGAL ARGUMENT

### A.   Plaintiffs Satisfy the Requirements of Rule 23(a).

Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To proceed as a class, Plaintiffs must satisfy Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy—and show that the proposed class fits into one of the three types of classes authorized by Rule 23(b). *Ms. L. v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 529, 535 (S.D. Cal. 2018).

Plaintiffs readily meet these requirements.[9] The number of class and subclass members demonstrates that joinder is impracticable, and both the class and subclass exceed common numerosity thresholds. Both the class and subclass assert a common set of claims based on a common set of facts. The legality of the Proclamation, the Asylum Shutdown Policy, and the CBP One Cancellation are common questions that will generate common answers. Moreover, Plaintiffs seek relief that will restore access to the asylum process for all proposed class and subclass members and thereby remedy the harm they have suffered. The Individual Plaintiffs' claims are typical of the proposed class and subclass that they seek to represent, and each Individual Plaintiff will fairly and adequately represent the interests of the class and subclass. For the reasons detailed below, and consistent with prior decisions from the Ninth Circuit and this District certifying classes challenging federal immigration policies,

---

[9] When analyzing class certification, "[t]he court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). "But admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.* (concluding that district court abused its discretion by refusing to consider a declaration purely on admissibility grounds).

the putative class and subclass should both be certified.[10]

## 1.    The Proposed Class and Subclass Are so Numerous that Joinder Is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility" but only "the difficulty or inconvenience of joining all members of [the] class." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013) (citation omitted).

Plaintiffs "need not state the exact number of potential class members; nor is a specific minimum number required." *Ms. L.*, 331 F.R.D. at 536. However, "courts find numerosity when the class includes at least forty members." *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010) (citations omitted); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014). Because Plaintiffs seek to certify a Rule 23(b)(2) class, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed

---

[10] *See Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788, 807–08 (9th Cir. 2020) (affirming certification of class of individuals raising Fourth Amendment claims concerning detention pursuant to a detainer); *Walters v. Reno,* 145 F.3d 1032 (9th Cir. 1998) (affirming certification of nationwide class of individuals challenging adequacy of notice in document fraud cases); *Ms. L*, 331 F.R.D. at 541 (certifying class of parents who were detained in immigration custody and separated from their children); *Al Otro Lado v. Wolf*, 336 F.R.D. 494 (S.D. Cal. 2020) ("*AOL v. Wolf*") (certifying class of people seeking access to the asylum process at POEs); *Al Otro Lado, Inc. v. McAleenan,* 423 F. Supp. 3d 848, 878 (S.D. Cal. 2019) ("*AOL v. McAleenan*") (provisionally certifying a subclass of people who had been metered while trying to access the asylum process at POEs); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1002 (9th Cir. 2020) (denying the government's motion for a stay pending appeal of the district court's order enjoining enforcement of the challenged rule against the subclass provisionally certified in *AOL v. McAleenan*, 423 F. Supp. 3d 848).

subclass . . . is sufficient to make joinder impracticable." *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004).

Plaintiffs easily satisfy the numerosity requirement, as the number of class members far exceeds the minimum requirement. Before January 20, 2025, Defendants gave out 1,450 CBP One appointments per day, which were scheduled roughly three weeks in advance.[11] Approximately 30,000 individuals had pending CBP One appointments that Defendants summarily canceled on January 20.[12] The proposed CBP One Subclass thus includes, at minimum, 30,000 members, and the broader Asylum Class likely includes thousands more people who were or will be seeking asylum at a POE.[13]

Here, joinder is impracticable because "general knowledge and common sense indicate that [the class] is large." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 556 (S.D. Cal. 2012) (citation omitted). In two motions involving classes similar to those proposed here, the defendants conceded, and the Court agreed, that the classes satisfied Rule 23(a)(1)'s numerosity requirement. *AOL v. Wolf*, 336 F.R.D. at 500–02 (finding that a class of "all noncitizens who seek or will seek to access the U.S.

---

[11] *CBP One™ Appointments Increased to 1,450 Per Day*, U.S. Customs & Border Protection, https://web.archive.org/web/20250619202852/https://www.cbp.gov/newsroom/national-media-release/cbp-one-appointments-increased-1450-day (June 30, 2023).

[12] *See* Thomas Graham, *US asylum seekers in despair after Trump cancels CBP One app: 'Start from zero again'*, The Guardian (Jan. 25, 2025), https://www.theguardian.com/us-news/2025/jan/23/trump-cbp-one-app-canceled-mexico. ("Roughly 30,000 appointments that had already been scheduled also have been canceled.").

[13] Camilo Montoya-Galvez, *About 270,000 migrants waiting to enter U.S. through app Trump has vowed to end, estimates show*, CBS News (Jan. 19, 2025), https://www.cbsnews.com/news/270000-migrants-waiting-to-enter-u-s-through-cbp-one-app-trump-has-vowed-to-end ("Approximately 270,000 migrants are estimated to be waiting on the Mexican side of the U.S.-Mexico border, hoping to get an appointment to enter the U.S. through a system that President-elect Donald Trump has vowed to end").

asylum process by presenting themselves at a Class A [POE] on the U.S.-Mexico border, and were or will be denied access to the U.S. asylum process by or at the instruction of [CBP] officials on or after January 1, 2016," satisfied Rule 23(a)(1)); *see also AOL v. McAleenan*, 423 F. Supp. 3d at 869–70 (finding that a class of "all non-Mexican noncitizens who were denied access to the United States [a]sylum process before July 16, 2019 as a result of the Government's metering policy and continue to seek access to the U.S. asylum process" also satisfied Rule 23(a)(1)).

Here, the proposed class and subclass each contain thousands of individuals who are geographically dispersed throughout Mexico, which is "large enough on its face" to satisfy Rule 23(a)(1). *AOL v. McAleenan*, 423 F. Supp. 3d at 870 (finding Rule(a)(1) satisfied for a class of 26,000 individuals dispersed along the U.S.-Mexico border).

### 2. Individual Plaintiffs' Claims Present Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted). Therefore, a question is common to the class when "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

The requirements of Rule 23(a)(2) have been construed permissively, and one significant common question of law or fact will satisfy the rule. *See Ms. L.*, 331 F.R.D. at 536, 538. Critically, commonality is satisfied where a "lawsuit challenges a system-wide practice or policy that affects all of the proposed class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *see also Ms. L.*, 331 F.R.D.

at 538 (holding that plaintiffs met commonality because, *inter alia*, "the focus of this litigation is on the Government's practice of separating migrant parents and children"); *Chhoeun v. Marin*, No. SACV 17-01898-CJC(GJSx), 2018 WL 6265014, at *5 (C.D. Cal. Aug. 14, 2018) (commonality satisfied where "[t]he central question in [the] case is whether the Government's policy of revoking proposed class members' release and re-detaining them without any procedural protections is unlawful"); *Inland Empire - Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *9 (C.D. Cal. Feb. 26, 2018) (commonality satisfied where plaintiffs "challenge[d] Defendants' common termination policies and practices as categorically violating the APA and the Due Process Clause—not the agency's ultimate exercise of discretion with respect to each recipient.") (internal quotation marks omitted).

"[I]ndividual factual differences among class members pose no obstacle to commonality." *Rosas v. Baca*, No. CV 12-00428 DDP (SHx), 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012); *see also Bloom v. City of San Diego*, No. 3:17-cv-02324-AJB-MSB, 2021 WL 8053533, at *5 (S.D. Cal. June 8, 2021) (finding that plaintiffs satisfied the commonality requirement, despite "some inevitable individual questions," citing *Rosas*).[14]

Plaintiffs' suit raises numerous legal questions common to the proposed Asylum Class. All class members assert four claims challenging the validity of the Proclamation and/or the Asylum Shutdown Policy, all of which turn on the same underlying issue, *i.e.*, whether Defendants' actions are unlawfully preventing members of the proposed Asylum Class from presenting themselves at a POE to seek asylum. ECF No. 1 at ¶¶ 169–192, 208–212 (Causes of Action Nos. 1–3, 6). Plaintiffs' claims raise common legal questions regarding whether Defendants'

---

[14] Slight variations in how class members experience the government's failure to comply with the law do not defeat class certification. In fact, this Court has certified similar classes despite variations in how the class members were impacted by a government policy. *See AOL v. Wolf*, 336 F.R.D. at 502–03.

actions violate the INA, the APA, and/or are ultra vires. The CBP One Subclass asserts two additional claims challenging the legality of the CBP One Cancellation, which turn on (1) whether Defendants complied with the APA when they summarily canceled some 30,000 CBP One appointments with no notice or explanation, and (2) on whether Defendants' cancellation of putative CBP One Subclass members' appointments despite their significant reliance interests was arbitrary and capricious. *Id.* ¶¶ 193–207 (Causes of Action Nos. 4, 5). Any of these common legal issues standing alone is sufficient to satisfy Rule 23(a)(2)'s commonality requirement. *See Ms. L*, 331 F.R.D. at 536–37 (finding that plaintiffs satisfied the commonality requirement because, *inter alia*, they asserted "the same legal claim, namely whether Defendants' practice of separating proposed class members from their minor children" violated the Due Process Clause). Plaintiffs thus satisfy Rule 23(a)(2).

Moreover, whether an agency is correctly interpreting and enforcing laws and regulations is a common question of law and fact sufficient for class certification. In *AOL v. McAleenan*, before another court in this District, plaintiffs sought provisional class certification for a putative class of asylum seekers turned away before the effective date of a new asylum eligibility rule and later inspected and processed while that rule was still in effect. 423 F. Supp. 3d at 871. The court found that commonality existed because the court could determine "in one fell swoop" whether the government was "improperly construing" its own regulation to apply to those who were turned back before the regulation's promulgation. *See id.*; *see also Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014) (affirming class certification and finding commonality where "all members of the class are subject identically to those same policies and practices, and the constitutionality of any given policy and practice . . . can be answered in a single stroke").

Plaintiffs' claims also raise at least the following common questions of fact: (1) whether Defendants' actions prevent Asylum Class members who have sought or will seek to present themselves at a Class A POE on the U.S.-Mexico border from

accessing the U.S. asylum process; and (2) whether Defendants rendered the CBP One Subclass unable to seek asylum when Defendants canceled putative CBP One Subclass members' appointments despite their significant reliance interests. *See, e.g.*, *Parsons*, 754 F.3d at 679.

### 3.    Individual Plaintiffs' Claims Are Typical of the Claims of the Proposed Class and Subclass.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ms. L.*, 331 F.R.D. at 539 (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (internal citation omitted).

Individual Plaintiffs' claims are coextensive with those of the rest of the class and subclass. For the Asylum Class, the named Plaintiffs and each proposed class member are suffering the same injury (they were or will be unlawfully prevented from seeking asylum at a POE on the U.S.-Mexico border); and the injury arises from the same conduct by Defendants (the Proclamation and Asylum Shutdown Policy and Defendants' actions implementing them). Likewise, for the CBP One Subclass, the CBP One Individual Plaintiffs—Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe, Jean Doe, and Rous Doe—and all proposed CBP One Subclass members are also suffering the same injury (their CBP One appointments were abruptly canceled, preventing them from seeking asylum despite their reliance on Defendants' instructions, and leaving them stranded under dangerous conditions in Mexico); the injury arises from the same conduct by Defendants (their categorical cancellation of all scheduled CBP One appointments); and Defendants' actions

1   similarly violate their statutory right to seek asylum. *E.g.*, Ex. A, Maria Doe Decl.

2   ¶¶ 10–13; Ex. B, Rous Doe Decl. ¶¶ 16–21; Ex. C, Fernando Doe Decl. ¶¶ 15–20;

3   Ex. D, Jean Doe Decl. ¶¶ 13–15; Ex. E, Eduardo Doe Decl. ¶¶ 10–14; Ex. H, Ali Doe

4   Decl. ¶¶ 10–12; Ex. I, Jessica Doe Decl. ¶¶ 16–19.

5        Because "the claims of the named Plaintiffs and the claims of class members

6   are so interrelated that the interests of the class members will be fairly and adequately

7   protected in their absence," Plaintiffs meet Rule 23(a)(3)'s typicality requirement.

8   *See Ms. L.*, 331 F.R.D. at 539 (finding that plaintiffs satisfied the typicality

9   requirement because, *inter alia*, "Plaintiffs' claims are the same as those raised by

10  absent class members, namely the Government's practice . . . violates their right to

11  due process [and] the injuries suffered by the named Plaintiffs are the same as those

12  suffered by members of the proposed class") (internal quotation marks omitted).

13      **4.    Individual Plaintiffs Will Fairly and Adequately Protect the
    Interests of the Proposed Class and Subclass.**

14

15       Rule 23(a)(4) requires a showing that "the representative parties will fairly and

16  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A

17  representative is adequate where (1) there is no conflict of interest between the

18  representative and its counsel and absent class members, and (2) the representative

19  and its counsel will pursue the action vigorously on behalf of the class." *Arnott v.*

20  *U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 588 (C.D. Cal. 2012)

21  (citation omitted). "[O]nly a conflict that goes to the very subject matter of the

22  litigation will defeat a party's claim of representative status." 7A Mary Kay Kane,

23  *Federal Practice & Procedure* § 1768 (4th ed. 2023).

24       Federal Rule of Civil Procedure 23(g) is designed to "guide the court in

25  assessing proposed class counsel as part of the certification decision." Fed. R. Civ. P.

26  23(g) advisory committee's note (2003). Rule 23(g)(1)(A) provides that, in

27  appointing class counsel, a court "must consider" the following: "(1) the work

28  counsel has done in identifying or investigating potential claims in the action,

(2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class."

Individual Plaintiffs will fairly and adequately protect the interests of the proposed Asylum Class because, as discussed, Individual Plaintiffs and proposed class members have identical claims that all arise from Defendants' same unlawful conduct. Ex. A, Maria Doe Decl. ¶¶ 12–13; Ex. B, Rous Doe Decl. ¶¶ 16–17, 20–21; Ex. C, Fernando Doe Decl. ¶¶ 13, 16–19; Ex. D, Jean Doe Decl. ¶¶ 14–15; Ex. E, Eduardo Doe Decl. ¶¶ 11–12, 14; Ex. F, Dragon Doe Decl. ¶¶ 11–12; Ex. G, Anahi Doe Decl. ¶¶ 11–124; Ex. H, Ali Doe Decl. ¶¶ 10–12; Ex. I, Jessica Doe Decl. ¶¶ 17–19; Ex. J, Diana Doe Decl. ¶¶ 9–11; Ex. K, Nikolai Zolotov Decl. ¶¶ 10–13. Likewise, Individual Plaintiffs Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe, Jean Doe, and Rous Doe will fairly and adequately protect the interests of the proposed CBP One Subclass because they—like all members of the Subclass—were additionally harmed by the unlawful cancellation of scheduled CBP One appointments. Ex. A, Maria Doe Decl. ¶¶ 11; Ex. I, Jessica Doe Decl. ¶¶ 13–16; Ex. C, Fernando Doe Decl. ¶¶ 14–15; Ex. H, Ali Doe Decl. ¶¶ 10–12, 14; Ex. E, Eduardo Doe Decl. ¶¶ 9–10, 16; Ex. D, Jean Doe Decl. ¶¶ 13–14, 17; Ex. B, Rous Doe Decl. ¶¶ 13–16.

Through this action, Individual Plaintiffs seek vacatur and declaratory and injunctive relief that would allow them, and proposed class members, to access the U.S. asylum process. Individual Plaintiffs will pursue this action vigorously on behalf of the class. Ex. A, Maria Doe Decl. ¶ 15; Ex. B, Rous Doe Decl. ¶ 23; Ex. C, Fernando Doe Decl. ¶ 22; Ex. D, Jean Doe Decl. ¶ 17; Ex. E, Eduardo Doe Decl. ¶ 16; Ex. F, Dragon Doe Decl. ¶ 14; Ex. G, Anahi Doe Decl. ¶ 14; Ex. H, Ali Doe Decl. ¶ 14; Ex. I, Jessica Doe Decl. ¶ 21; Ex. J, Diana Doe Decl. ¶ 13; Ex. K, Nikolai Zolotov Decl. ¶ 15 (each Individual Plaintiff attesting commitment to being a class representative). Individual Plaintiffs do not seek any unique or additional relief that

19

would make their interests different from those of the putative Asylum Class members, and the CBP One Subclass Plaintiffs do not seek any relief that is distinct from that sought for the CBP One Subclass. Accordingly, there is no conflict of interest between Individual Plaintiffs and the putative class or subclass members. *Ms. L.*, 331 F.R.D. at 540.

Collectively, Plaintiffs' counsel in this action have extensive experience in complex litigation and class actions, including prior challenges to federal immigration policies and Defendants' implementation of those policies. Declaration of Eric Acker in Support of Plaintiffs' Motion for Class Certification and Motion to Proceed Pseudonymously ("Acker Decl.") ¶¶ 4–6; Declaration of Melissa Crow ("Crow Decl.") ¶¶ 3–6, 8–9, 12–13; Declaration of Brian Netter ("Netter Decl.") ¶¶ 6–7, 10–11; Declaration of Baher Azmy ("Azmy Decl.") ¶¶ 3–8; Declaration of Michelle Lapointe ("Lapointe Decl.") ¶¶ 4, 7–8, 10, 12. Leading up to and continuing into this litigation, Plaintiffs' counsel have spent significant time and resources investigating, documenting, and analyzing the current state of asylum processing at POEs along the southern border in the wake of the Proclamation, the Asylum Shutdown Policy, and the CBP One Cancellation. Acker Decl. ¶ 16 Crow Decl. ¶ 14; Netter Decl. ¶ 15; Azmy Decl. ¶ 10; Lapointe Decl. ¶ 13.

Notably, courts in this District have found many of the same counsel qualified to represent classes of asylum seekers in previous actions. *AOL v. McAleenan*, 423 F. Supp. 3d at 872; *AOL v. Wolf*, 336 F.R.D. at 505. Class counsel also have sufficient resources to litigate this matter to completion. Acker Decl. ¶ 7; Crow Decl. ¶ 14; Netter Decl. ¶ 15; Azmy Decl. ¶ 10; Lapointe Decl. ¶ 13. Plaintiffs are aware of no conflict of interest between Plaintiffs, proposed class members, and class counsel. Acker Decl. ¶ 18; Crow Decl. ¶ 15; Netter Decl. ¶ 16; Azmy Decl. ¶ 9; Lapointe Decl. ¶ 14. Together, the class action and subject matter expertise of Plaintiffs' counsel qualify them to represent the proposed class and subclass. Because "[t]here is no conflict between Plaintiffs' counsel and the members of the proposed class, and

counsel have demonstrated they will prosecute the case vigorously on behalf of the class . . . the requirement of Rule 23(a)(4) is met." *Ms. L.*, 331 F.R.D. at 540.

### B.    Plaintiffs Satisfy the Requirements of Rule 23(b)(2).

Class certification pursuant to Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (citation omitted); *see AOL v. McAleenan*, 423 F. Supp. 3d at 872 (Rule 23(b)(2) applies "when a single injunctive or declaratory judgment would provide relief to each member of the class" (internal citation omitted).); *Ms. L.*, 331 F.R.D. at 540. Thus, class certification is appropriate where the party opposing the class "has acted in a consistent manner towards members of the class so that [its] actions may be viewed as a part of a pattern of activity, or has established or acted pursuant to a regulatory scheme common to all class members." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003) (quoting Wright, Miller & Kane, *Federal Practice and Civil Procedure* § 1775.). "Even if some class members have not been injured by the challenged practice, a [Rule 23(b)(2)] class may nevertheless be appropriate." *Walters*, 145 F.3d at 1047.

The mere existence of factual differences among some class members will not defeat a motion to certify a Rule 23(b)(2) class because the focus of Rule 23(b)(2) is the relief sought, not the factual circumstances of each class member. *See Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 643 (D. Ariz. 2016) (rejecting argument that plaintiffs were "challeng[ing] . . . various practices amongst [multiple] facilities," because plaintiffs identified the "systemic nature of the conditions" at those detention facilities) (internal quotation marks omitted); *Walters*, 145 F.3d at 1047 ("[T]he

government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule."). The relevant question for purposes of Rule 23(b)(2) is "the 'indivisible' nature of the claim alleged and the relief sought." *Ms. L.*, 331 F.R.D. at 541 (certifying Rule 23(b)(2) class); *Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (rejecting argument that ICE facilities had different attributes, because "these differences do not negate the fact that Plaintiffs seek relief that is applicable to . . . the entire class"). This is because Rule 23(b)(2) "focuses on the defendant and questions whether the defendant has a policy that affects everyone in the proposed class in a similar fashion." 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:28 (6th ed. 2023).

For example, in *Jane Doe 1 v. Nielsen*, a group of eighty-seven Iranian Christians sued DHS for denying them entry into the United States. 357 F. Supp. 3d 972, 980–81 (N.D. Cal. 2018). Those plaintiffs argued that the government's "uniform response" to their applications to enter the United States was "sufficient to satisfy Rule 23(b)(2)." *Id.* at 992. The court reasoned that, in the face of the government's apparent uniform action, the "declaratory and injunctive relief sought [would] appl[y] equally to all members of the proposed class and thus conform[ed] to Rule 23(b)(2)." *Id.*

Similarly, in *AOL v. Wolf*, the Court held that Rule 23(b)(2)'s requirements were "plainly met," because, *inter alia*, "Plaintiffs allege that CBP officers refused to process asylum-seekers, an act which they claim is unlawful regardless of the grounds for the refusal." 336 F.R.D. at 506. The court concluded, "[t]he officers' refusal to process asylum-seekers, therefore, is the generally applicable ground for class-wide relief under Rule 23(b)(2)." *Id.* The Rule 23(b)(2) basis for class certification here is equally strong; all of the Asylum Class members were or will be denied access to POEs to seek asylum by Defendants, and Defendants canceled all the CBP One Subclass members' scheduled CBP One appointments on January 20,

1  2025.[15]

2       The relief that Individual Plaintiffs seek is applicable to and indivisible from

3  that sought by the proposed Asylum Class. Plaintiffs ask the Court to declare the

4  Proclamation and the Asylum Shutdown Policy unlawful, vacate the Asylum

5  Shutdown Policy, and enjoin Defendants from enforcing both. A single ruling

6  granting this relief would necessarily provide relief to *all* Individual Plaintiffs and

7  putative Asylum Class members, who have been and continue to be, or will be

8  deprived of access to the U.S. asylum process as a result of Defendants' unlawful

9  actions. Likewise, the CBP One Subclass Plaintiffs ask the Court to set aside the CBP

10 One Cancellation and restore subclass members' access to the U.S. asylum process.

11 A single ruling granting this relief would necessarily provide relief to *all* Individual

12 Plaintiffs seeking to represent the CBP One Subclass and all Subclass members, who

13 obtained CBP One appointments in reliance on Defendants' representations but were

14 prevented from presenting themselves at POEs after Defendants canceled their

15 appointments. Because Defendants' conduct is "applicable to [the Class and

16 Subclass] generally, rendering injunctive and declaratory relief appropriate to the

17 class as a whole," the requirements of Rule 23(b)(2) are satisfied. *Ms. L.*, 331 F.R.D.

18 at 541.

19 **IV.   CONCLUSION**

20      For the foregoing reasons, Plaintiffs respectfully request that the Court:

21      (i) certify the Asylum Class and CBP One Subclass, defined as follows:

22      **Asylum Class.** All noncitizens who, on or after January 20, 2025, have
   sought or will seek to present themselves at a Class A POE on the
23      U.S.-Mexico border to seek asylum; who were or will be prevented from
   accessing the U.S. asylum process by or at the direction of Defendants
24      based on the Proclamation or the Asylum Shutdown Policy; who
   continue to seek access to the U.S. asylum process; and who are not
25

26 [15] As another court in this District previously found, ascertainability is

27 not a requirement for certification of a Rule 23(b)(2) class. *See AOL v. McAleenan*,
   423 F. Supp. 3d at 872–73 (collecting cases).

28

physically present in the United States.

**CBP Subclass.** All noncitizens who received appointments through the CBP One app to present themselves at a Class A POE on the U.S.-Mexico border; whose appointments were canceled by Defendants on January 20, 2025; who continue to seek access to the U.S. asylum process; and who are not physically present in the United States.

(ii) appoint all Individual Plaintiffs as representatives of the Asylum Class;

(iii) appoint the CBP One Individual Plaintiffs as representatives of the CBP One Subclass; and

(iv) appoint Plaintiffs' counsel as Class Counsel.

Dated: June 25, 2025

Respectfully Submitted,

MORRISON & FOERSTER LLP

*s/ Eric M. Acker*

Attorney for Plaintiffs
*Email: eacker@mofo.com*
Eric M. Acker
Krista S. deBoer
Robert W. Manoso

CENTER FOR GENDER AND REFUGEE STUDIES
Melissa Crow
Blaine Bookey
Robert Pauw
Peter Habib

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy*
Angelo Guisado*
Adina Marx-Arpadi

AMERICAN IMMIGRATION COUNCIL
Michelle Lapointe
Rebecca Cassler
Suchita Mathur

DEMOCRACY FORWARD FOUNDATION
Brian Netter
Sarah M. Rich
Adnan Perwez