UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC., et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity, et al.,<br><br>                              Defendants. | Case No.:  3:25-cv-01501-RBM-BLM<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>**[Doc. 33]** |

Individual Plaintiffs Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe, Jean Doe, Rous Doe, Diana Doe, Nikolai Zolotov, Anahi Doe, and Dragon Doe ("Individual Plaintiffs") and Plaintiffs Al Otro Lado, Inc. and Haitian Bridge Alliance ("Organizational Plaintiffs") brought this class action to challenge Proclamation No. 10888, 90 Fed. Reg. 8333 (Jan. 20, 2025) ("Proclamation") that prevents noncitizens from accessing the U.S. asylum process provided for in 8 U.S.C. § 1158(a)(1), at ports of entry ("POE") along the U.S.-Mexico border.  (Compl. [Doc. 1] ¶¶ 2, 5–6, 8–14.)  The action also challenges the January 20, 2025 cancellation of all pending CBP One appointments and disabling of the scheduling function in the mobile application that provided the only

1

avenue for most noncitizens to seek asylum at a POE on the U.S.-Mexico border. (*Id.* ¶¶ 3, 6–7, 13–14.)

Plaintiffs now move to certify an Asylum Class and a CBP One Subclass. (Doc. 33.) Defendants have filed an Opposition. (Doc. 39.) Plaintiffs have filed a Reply. (Doc. 41.) The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Plaintiffs' Motion for Class Certification is **GRANTED**.

## I. BACKGROUND[1]

On January 20, 2025, Defendants cancelled approximately 30,000 CBP One appointments including some Individual Plaintiffs, to present themselves at a POE to access the U.S. asylum process and issued the Proclamation suspending access to asylum at the U.S.-Mexico border. (Compl. ¶¶ 1–4, 6–13, 16, 88, 94.)

As alleged in the Complaint, "[f]rom May 2023 until January 20, 2025, the only available avenue for most noncitizens to seek asylum" was "to wait in Mexico until they received an appointment to present themselves at a POE" through CBP One, and then, at their appointment time, "present themselves at a POE." (Compl. ¶ 3.) When the asylum seeker appeared for their appointment, "DHS's usual practice was to issue them a notice to appear in immigration court and release them into the United States." (*Id.* ¶ 4.) They "could then apply for asylum and related relief in immigration court proceedings." (*Id.*) Because it was the only way to access the asylum process at the U.S.-Mexico border, noncitizens relied on access through it as they waited in Mexico for their appointment or as they tried to get an appointment. (*Id.* ¶¶ 5, 12, 83, 94, 203, 206.) The January 20, 2025 cancellation of 30,000 appointments and disabling of the scheduling functionality of CBP

---

[1] The Court's summary of the facts relevant to this Motion is brief and does not, unless noted, include citation to the many declarations submitted in support of Plaintiffs' Motion and cited in Plaintiffs' briefs (Docs. 33-2–33-28), although they have been considered where relevant to the class certification analysis.

3:25-cv-01501-RBM-DDL

One eliminated the only way for those seeking asylum at the U.S.-Mexico border to access the asylum process. (Doc. 33-1 at 10; Compl. ¶¶ 70–80, 88, 90–95.)

The Proclamation followed the same day. (Comp. ¶¶ 96–102.) It states that until the President "issue[s] a finding that the invasion at the southern border has ceased," the "entry into the United States of such aliens, [i.e. 'aliens engaged in the invasion across the southern border'] be suspended." 90 Fed. Reg. 8335 (Jan. 20, 2025). It also precludes those without "sufficient medical information and reliable criminal history and background information" entry into the United States and restricts their access to asylum. *Id.* A February 28, 2025 implementation memorandum from the CBP Office of Field Operations ("OFO Implementation") that followed indicates that "[a]liens subject to the Proclamation shall not be permitted to cross the international border." (Doc. 1-2 at 5; Compl. ¶¶ 103–106.)[2] As particularly relevant here because the classes Plaintiffs seek to certify are asylum seekers, the OFO explicitly states that "[a]n undocumented alien who claims or manifests a fear at the international border line to CBP personnel is not excepted from the Proclamation['s]" suspension of entry. (Doc. 1-2 at 5.) Plaintiffs allege that the cancellation of all CBP One appointments, the Proclamation, and the OFO Implementation ("Asylum Shutdown Policy") collectively have shut down asylum access at the U.S.-Mexico border. (Compl. ¶ 13.)

The cancellation of all CBP One appointments, the lack of any other means to access the asylum process, and the prohibition on any noncitizen being permitted to physically enter the United States from Mexico, including those seeking asylum based on fear, has resulted in the denial of access to the asylum process provided by law in 8 U.S.C. § 1158(a)(1) for the Individual Plaintiffs and the class members they seek to represent.

---

[2] The previous bullet point of the Memorandum defined those not subject to the Proclamation as "U.S. citizens (USCs) and Lawful Permanent Residents (LPRs); Unaccompanied alien children (UAC); and Aliens with valid entry documents or authorizations (e.g. visa, ESTA, or who otherwise provide sufficient medical information or reliable criminal history information)." (Doc. 1-2 at 5.)

3:25-cv-01501-RBM-DDL

(Doc. 33-1 at 12–13 (citing declarations of Individual Plaintiffs that scheduled CBP One appointments, had their appointments cancelled, and were not provided any other way to access the asylum process).)  Plaintiffs also include declarations from Individual Plaintiffs detailing, as examples, the threats of violence they have faced and continue to face while they wait for access to seek asylum at the U.S.-Mexico border.  (Doc. 33-1 at 13–16; Compl. ¶¶ 107–159.)

Plaintiffs bring six causes of action: (1) Violation of the Immigration and Nationality Act, 8 U.S.C. § 1158; (2) Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C) (Contrary to Law); (3) Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (Arbitrary & Capricious); (4) Agency Action Without Observance of Procedures Required by Law, Administrative Procedure Act, 5 U.S.C. § 553, 706(2)(D); (5) Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (Arbitrary & Capricious);[3] and (6) Ultra Vires.  (Compl. ¶¶ 169–212.)

## II.    LEGAL STANDARDS

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  Parties seeking class certification must meet the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

///

_____

[3] The fourth and fifth causes of action are brought specifically based on the cancellation of CBP One appointments.

3:25-cv-01501-RBM-DDL

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) ("district court must ensure that the plaintiffs have made two showings, one under Rule 23(a) and one under Rule 23(b)") (citations omitted).

Plaintiffs seek certification under Rule 23(b)(2). (Doc. 33-1 at 8, 27–29.) It requires "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"Although 'a court's class-certification analysis must be 'rigorous' and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 354 (S.D. Cal. 2024) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 568 U.S. at 466; *see also Ms. L. v. U.S Immigr. & Customs Enf't*, 331 F.R.D. 529, 535 (S.D. Cal. 2018) ("Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage.") (quoting *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983)). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

"Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original

3:25-cv-01501-RBM-DDL

decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004–05 (9th Cir. 2018) (citation omitted). "The district court's class certification order, while important, is also preliminary." *Id.* at 1004 ("An order that grants or denies class certification may be altered or amended before final judgment.") (quoting Fed. R. Civ. P. 23(c)(1)(C)).

### III.   DISCUSSION

Plaintiffs seek to certify a class and a subclass.  The Asylum Class is defined as:

> All noncitizens who, on or after January 20, 2025, have sought or will seek to present themselves at a Class A POE on the U.S.-Mexico border to seek asylum; who were or will be prevented from accessing the U.S. asylum process by or at the direction of Defendants based on the Proclamation or the Asylum Shutdown Policy; who continue to seek access to the U.S. asylum process; and who are not physically present in the United States.

(Compl. ¶ 160; Doc. 33-1 at 7.)

The CBP One Subclass is defined as:

> All noncitizens who received appointments through the CBP One app to present themselves at a Class A POE on the U.S.-Mexico border; whose appointments were canceled by Defendants on January 20, 2025; who continue to seek access to the U.S. asylum process; and who are not physically present in the United States.

(Compl. ¶ 161; Doc. 33-1 at 7.)

### A.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable."  The Asylum Class and CBP One Subclass meet the numerosity requirement.  Numerosity "is generally satisfied when the class contains 40 or more members." *Al Otro Lado, Inc. v. Wolf*, 336 F.R.D. 494, 501 (S.D. Cal. 2020) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) and *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007)); *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement

3:25-cv-01501-RBM-DDL

satisfied when a class includes at least 40 members.") (finding certification of class of 20 was not clear abuse of discretion).

Defendants accuse Plaintiffs of speculation and improperly relying "on 'reasonable inferences' and 'common sense' to show numerosity," and claim they lack "[a] reasonable estimate of the number of class members." (Doc. 39 at 31–32.) However, "[w]hen considering numerosity and the impracticability of joinder, it is unnecessary for the class representatives to either identify each particular member of a class, or to state the exact number of persons in a class." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 261 (S.D. Cal. 1998). "Instead, trial judges may reasonably infer if numerosity is satisfied from the facts of each particular case." *Id.* at 261–62.

Here, the Court need not rely on inferences to find the numerosity requirement is met. Plaintiff's evidence that CBP was scheduling 1,450 appointments per day for appointments three weeks out and that 30,000 CBP One scheduled appointments were cancelled on January 20, 2025 provides a sufficient basis to conclude the number of noncitizens seeking asylum at the U.S.-Mexico border was great. (Doc. 33-1 at 19; Doc. 41 at 11–12.) This in turn means the Asylum Class is likely in the thousands, but at least hundreds. Additionally, while Defendants may be correct that many individuals who had appointments or were waiting in Mexico to access the asylum process may have abandoned their efforts in the months between January 20, 2025 and the filing of Plaintiffs' Motion for Class Certification (Doc. 39 at 18), it would be an unreasonable inference and defy common sense to conclude that the number dropped so much that a numerosity threshold of 40 would not be met.

Plaintiffs have established the classes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

The commonality requirement requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "What matters to class certification ... is not the raising of common questions—even in droves—but rather, the capacity of a class-

3:25-cv-01501-RBM-DDL

wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quotations omitted). "This element has 'been construed permissively,' and 'all questions of fact and law need not be common to satisfy the rule.'" *Ms. L.*, 331 F.R.D. at 536 (quoting *Ellis*, 657 F.3d at 981).

Significantly here, "[t]he existence of shared legal issues with divergent factual predicates is sufficient." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quotations omitted). "A plaintiff must 'demonstrate that the class members have suffered the same injury,' which means that 'their claims must depend upon a common contention.'" *Gonzalez v. United States Immigr. and Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020). "A common contention need not be one that 'will be answered, on the merits, in favor of the class … . It only 'must be of such a nature that it is capable of classwide *resolution*.'" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (emphasis in original) (quoting *Amgen Inc.*, 568 U.S. at 459 and *Dukes*, 564 U.S. at 350). "'[C]lasswide resolution … means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Meyer*, 707 F.3d at 1041–42 (quoting *Dukes*, 564 U.S. at 350). "'[W]hether class members could actually prevail on the merits of their claims' is not a proper inquiry in determining the preliminary question 'whether common questions exist.'" *Alcantar*, 800 F.3d 1053 (quoting *Ellis*, 657 F.3d at 983 n.8).

For the Asylum Class, Plaintiffs argue all four of their claims "challenging the validity of the Proclamation and/or the Asylum Shutdown Policy … turn on the same underlying issue, i.e. whether Defendants' actions are unlawfully preventing members of the proposed Asylum Class from presenting themselves at a POE to *seek* asylum." (Doc. 33-1 at 21 (emphasis added).) Plaintiffs assert their "claims raise common legal questions regarding whether Defendants' actions violate the INA, the APA, and/or are ultra vires." (Doc. 33-1 at 21–22.) For the CBP One Subclass, Plaintiffs assert two additional claims challenging the cancellations, "which turn on (1) whether Defendants complied with the APA when they summarily cancelled some 30,000 CBP One appointments with no notice

3:25-cv-01501-RBM-DDL

or explanation, and (2) … whether Defendants' cancellation of putative CBP One Subclass members' appointments, despite their significant reliance interests, was arbitrary and capricious."  (Doc. 33-1 at 22 (citing Compl. ¶¶ 192–207).)

The only commonality issue Defendants raise specific to the CBP One Subclass is that not all "members are subject to the same practices and thus have not suffered the same legal injury." (Doc. 39 at 19–20.)  However, it is unclear how they have not been subject to the same practices or not suffered the same legal injury when they have all had their appointments to seek asylum abruptly cancelled and continue to seek asylum at the U.S.-Mexico border.

Defendants argue the Asylum Class lacks commonality because it includes noncitizens "who are not currently subject to the Proclamation" or the Asylum Shutdown Policy but may be in the future.  (Doc. 39 at 19; *see also* Doc. 19 at 14 (arguing overbroad class definition impacts commonality).)  Defendants argue this would allow inclusion of class members that lack standing.  (*Id.* at 19.)  Presumably, Defendants are referencing the portion of the class definition that includes those who "will seek to present themselves at a Class A POE on the U.S.-Mexico border."  Defendants characterize these class members as lacking standing and their inclusion as overbroad because they have not yet been injured by the Asylum Shutdown Policy.  (*Id.* at 14–15, 19.)  However, as Plaintiffs explain in their Reply, "[c]ourts have frequently certified classes whose members share a common threat of future harm."  (Doc. 41 at 12 (citing *Nehmer v. United States Veterans' Admin.*, 118 F.R.D. 113, 117 (N.D. Cal. 1987)).)  Here, the common threat they all face is being precluded from accessing the asylum process at the U.S.-Mexico border by the Proclamation and OFO Implementation.

Defendants also argue the Asylum Shutdown Policy Plaintiffs rely on is not discrete enough, potentially encompassing "undefined conduct" such that the Court "cannot possibly determine the legality of the so-called Policy on a common basis."  (Doc. 39 at 15–16, 19.)  Plaintiffs reiterate in Reply that "[t]he putative class members' shared injury is the denial of access to the asylum process, and the shared question is whether

3:25-cv-01501-RBM-DDL

Defendants' actions prevent their access to the asylum system—not whether every class member will ultimately qualify for asylum." (Doc. 41 at 14 (citing *Wolf*, 336 F.R.D. at 504).)

While the Court agrees that the scope of the Asylum Shutdown Policy is not exceptionally specific, as summarized above, the Proclamation and OFO Implementation are sufficiently clear about suspending entry for noncitizens, including specifically for those claiming fear of persecution. Similarly, the Court is not persuaded that the different backgrounds or experiences of the class members undermine the common issue, the Proclamation and OFO Implementation preventing *access* to the asylum process. The issue here is not whether they will ultimately be granted asylum, but whether being prevented from accessing asylum at all is a common contention for purposes of commonality. In actions "challenging system-wide practices or policies, 'individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality.'" *Powers v. McDonough*, 163 F.4th 1162, 1185 (9th Cir. 2025) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). "Commonality does not require that 'every question in the case, or even a preponderance of questions, is capable of class-wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement.'" *Id.* (quoting *Wang*, 737 F.3d at 544). And, the Ninth Circuit has held that the commonality requirement is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Id.* (citing *Armstrong*, 275 F.3d at 868). The class members share the common denial of access to the asylum process through the Proclamation and OFO Implementation and an eventual determination whether this policy is unlawful "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Meyer*, 707 F.3d at 1041–42.

The Court finds "there are questions of law or fact common to the class[es]" for purposes of Rule 23(a)(2).

///

3:25-cv-01501-RBM-DDL

### 3.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  In general, the claims of the representative parties "need not be substantially identical" to those of all absent class members and need only be "reasonably co-extensive" in order to qualify as typical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer*, 707 F.3d at 1041 (9th Cir. 2012) (citations omitted).  "The test of typicality is 'whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).

Defendants' arguments on typicality are similar to their arguments on commonality.[4] Defendants point to the "differing and unique experiences" of the Individual Plaintiffs "with respect to their efforts to access POEs to seek asylum," primarily challenging differences in the ways they have or have not attempted to access a POE and their intentions.  (Doc. 39 at 23; *see also* Doc. 39 at 15 (challenging "continue to seek" as a varied state of mind).)  Defendants argue distinctions in the way Individual Plaintiffs attempted to or have been deterred from seeking asylum at a POE mean the Individual Plaintiffs' claims are not typical of the claims of class members. (*Id.*)

---

[4] "The typicality requirement will occasionally merge with the commonality requirement … because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Ms. L.*, 331 F.R.D. at 539 (citing *Parsons*, 754 F.3d at 687 and quoting *Dukes*, 564 U.S. at 349 n.5)

3:25-cv-01501-RBM-DDL

However, "[t]he test of typicality is 'whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685 (citation omitted).  As discussed above, the Individual Plaintiffs and class members have suffered the same injury—denial of access to the asylum process—and that injury is not unique to the named plaintiffs because the denial of access is based on the Proclamation and OFO Implementation.  Additionally, although not specifically challenged by Defendants, the Court finds the CBP One Plaintiffs' claims based on their appointment cancellations and denial of access to asylum as the U.S.-Mexico border are typical of the class.

The Court find the claims of the Individual Plaintiffs are typical of the claims of the classes.

### 4. Adequacy of Representation

Rule 23(a)(4), the final requirement of Rule 23, requires "the representative parties will fairly and adequately protect the interests of the class."  "In reviewing this issue, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ms. L.*, 331 F.R.D. at 540 (quoting *Hanlon*, 150 F.3d at 1020).  "The named plaintiffs and their counsel must have sufficient 'zeal and competence' to protect the interests of the rest of the class."  *Id.* (quoting *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)).

Defendants do not contest the adequacy of class counsel but argue the Individual Plaintiffs do not adequately represent class members who have attempted to present themselves at a POE with the reliable medical and criminal history records that the Proclamation and the OFO Implementation require.  Defendants also argue the Individual Plaintiffs are not adequate representatives because they "lack standing to challenge the Proclamation or any of CBP's practices or policies."  (Doc. 39 at 24.)  Defendants assert that any Individual Plaintiff that "did not present themselves at a POE and were not

12

prevented from doing so by CBP lack standing. (*Id.*)

In Reply, Plaintiffs first note that adequacy is an evaluation of conflicts of interest and "Defendants do not even argue there is a conflict of interest between the Individual Plaintiffs and absent class members." (Doc. 41 at 14.)  However, Plaintiffs also explain that they are challenging the document requirements as "impossibly prohibitive because people do not generally flee persecution with a full set of personal files" and "[t]he absence of a class representative who attempted to present papers merely reflects this reality." (*Id.* at 15.)  Plaintiffs also fairly note that Defendants provide no authority for the proposition that there must be a separate class representative for "every possible variation of how individuals might present themselves." (*Id.*)

As discussed above, there may be distinctions between the circumstances of the Individual Plaintiffs and the class members.  There may also be variations in their attempts or lack of attempts to access a POE under the Proclamation and OFO Implementation with or without documents.  However, there is nothing about those differences that equates to a conflict of interest between the Individual Plaintiffs and their class members when both are being "prevented from accessing the U.S. asylum process by or at the direction of Defendants based on the Proclamation or Asylum Shutdown Policy." (Compl. ¶ 160; Doc. 33-1 at 7.)

Assuming standing is appropriately raised in terms of the adequacy of representation requirement, a point the parties do not specifically address, the Court finds Individual Plaintiffs are not required to be denied entry, with or without their personal records, to establish standing to challenge the Proclamation and OFO Implementation.  The Proclamation and OFO Implementation deny the Individual Plaintiffs access to the asylum process.  Given the broad suspension of entry, including suspension of entry for those fearing persecution, the Individual Plaintiffs have suffered a non-hypothetical and actual injury—denial of access to the asylum process—that is fairly traceable to Defendants Proclamation and OFO Implementation and could be redressed by a favorable ruling. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) ("[T]o satisfy Article

3:25-cv-01501-RBM-DDL

III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citations omitted).

The Court finds no evidence that the proposed class representatives have any conflicts of interest with the members of the classes, and Plaintiffs' counsel have shown that they are willing to prosecute this action vigorously on behalf of the class. The requirements of Rule 23(a)(4) have been met.

Having found the requirements of Rule 23(a) met, the Court addresses Rule 23(b)(2).[5]

**B.      Rule 23(b)(2)**

Plaintiffs seek certification under Rule 23(b)(2), which allows the court to certify a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to a (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quotation omitted). "In other words, Rule 23(b)(2) applies only when a single injunctive or declaratory judgment

---

[5] Defendants assert a number of arguments related to issues in the class definitions and their impact on the Rule 23(a) requirements that the Court has addressed in determining if the Rule 23(a) requirements are met. (Doc. 39 at 13–16.) Despite acknowledging the Ninth Circuit's position on ascertainability as "disfavored," Defendants also advance some arguments regarding issues of ascertainability of the class members. (Doc. 39 at 14–15.) "Although the Ninth Circuit has yet to expressly address the ascertainability requirement in the context of Rule 23(b)(2), courts in this Circuit have held that it does not apply." *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 872–73 (S.D. Cal. 2019) (collecting cases).

3:25-cv-01501-RBM-DDL

would provide relief to each member of the class." *Id.*

Here, "Plaintiffs asks the Court to declare the Proclamation and Asylum Shutdown Policy unlawful, vacate the Asylum Shutdown Policy, and enjoin Defendants from enforcing both." (Doc. 33-1 at 29.) Plaintiffs explain that this single ruling would provide relief to all Individual Plaintiffs and Asylum Class members who have been and continue to be or will be deprived of access to the U.S. asylum process as a result of Defendants' unlawful actions." (*Id.*) The CBP One Subclass Plaintiffs ask the Court to set aside their cancellations and similarly restore access to the asylum process. (*Id.*)

Defendants repeat their prior arguments concerning the distinctions between individual class members precluding a single ruling providing relief and also argue a classwide injunction is not available. (Doc. 39 at 25.) As discussed above, the common issue all class members face is denial of access to asylum based on Defendants' Proclamation and OFO Implementation. As such, that conduct applicable "generally to the class" can be declared unlawful as to "the class as a whole." Rule 23(b)(2). This would similarly also restore access to the U.S. asylum process for the CBP One Subclass.

Here, because the Proclamation and OFO Implementation can be declared invalid as to all class members, Plaintiffs have met the requirements of Rule 23(b)(2). *See Walters v. Reno*, 145 F.3d 1032, 1046-47 (9th Cir. 1998) (Rule 23(b)(2) is satisfied "if class members complain of a pattern or practice that is generally applicable to the class as a whole.").[6]

///

///

---

[6] As Plaintiffs explain in their Reply, the Court need not "decide the contours of whether and how" 8 U.S.C. § 1252(f)(1)'s limits on classwide injunctive relief would apply here because "it is not a bar to class certification" and classwide declaratory relief remains available. (Doc. 41 at 17 (citing *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) and explaining that even when classwide injunctive relief is barred, classwide declaratory relief is not impacted).)

3:25-cv-01501-RBM-DDL

## IV.    CONCLUSION

The Motion for Class Certification (Doc. 33) is **GRANTED**.  The following Asylum Class and CBP One Subclass are certified:

- **Asylum Class:** All noncitizens who, on or after January 20, 2025, have sought or will seek to present themselves at a Class A POE on the U.S.-Mexico border to seek asylum; who were or will be prevented from accessing the U.S. asylum process by or at the direction of Defendants based on the Proclamation or the Asylum Shutdown Policy; who continue to seek access to the U.S. asylum process; and who are not physically present in the United States.

- **CBP One Subclass:** All noncitizens who received appointments through the CBP One app to present themselves at a Class A POE on the U.S.-Mexico border; whose appointments were canceled by Defendants on January 20, 2025; who continue to seek access to the U.S. asylum process; and who are not physically present in the United States.

The Court further **ORDERS**:

- Individual Plaintiffs are appointed as representatives of the Asylum Class;
- CBP One Individual Plaintiffs are appointed as representatives of the CBP One Subclass; and
- Plaintiffs' counsel are appointed as Class Counsel.

**IT IS SO ORDERED.**

Dated:  March 30, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

16

3:25-cv-01501-RBM-DDL