ADAM GORDON
United States Attorney
GLEN F. DORGAN
California State Bar No. 160502
ERIN M. DIMBLEBY
California State Bar No. 323359
ERICA C. SKERVEN
California State Bar No. 347390
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546- 7665/6987
Facsimile: (619) 546-7751
Email: Glen.Dorgan@usdoj.gov
Email: Erin.Dimbleby@usdoj.gov
Email: Erica.Skerven@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AL OTRO LADO, Inc., et al.,<br>Plaintiffs,<br>v.<br>DONALD J. TRUMP, President of the United States, in his official capacity, et al.,<br>Defendants. | Case No.: 25-cv-01501-RBM-DDL<br>**DEFENDANTS' SUPPLEMENTAL BRIEF** |

## I. INTRODUCTION AND RELEVANT PROCEDURAL HISTORY

The Immigration and Nationality Act ("INA") governs the circumstances in which an alien may apply for asylum. 8 U.S.C. § 1158. The INA provides that "any alien who is physically present in the United States or who arrives in the United States" may apply for asylum. *Id.* § 1158(a). Many of Plaintiffs' claims in this case are expressly premised, in whole or in part, on the argument that the asylum statute creates a "statutory obligation" to provide access to the U.S. asylum process to aliens in Mexico who seek to cross the border at a Port of Entry (POE). *See* ECF No. 1 ("Compl.") ¶¶ 2, 13, 46-47, 58, 63-64, 170-172, 181-82. The Supreme Court in *Mullin v. Al Otro Lado*,

No. 25-5, 609 U.S. ---, 2026 WL 1825741 (June 25, 2026) ("*Al Otro Lado I*"), rejected this premise. The Supreme Court held that "an alien who is standing in Mexico does not 'arriv[e] in the United States' [including under the asylum statute, § 1158(a)(1)] by attempting, and failing, to set foot in this country." *Id.* at *6. "The INA neither entitles such an alien to apply for asylum nor requires an immigration officer to inspect him." *Id.* at *10. "An alien 'arrives in the United States' only when he crosses the border." *Id.* at *6. For these reasons, the claims premised on a purported entitlement to access the asylum process fail to state a claim and the Organizational Plaintiffs lack statutory standing.

On January 20, 2025, the President issued Proclamation 10888 (the "Proclamation"), which, under the authority of 8 U.S.C. §§ 1182(f) and 1185(a), suspended entry to the United States of any alien who fails, before entering the United States, to provide Federal officials with sufficient medical, criminal history, and background information. Proclamation § 3; *see generally* Mot. to Dismiss (ECF No. 45) at 11:23–12:20. On June 6, 2025, the organizations Al Otro Lado and Haitian Bridge Alliance (collectively, the "Organizations") and multiple individual plaintiffs filed this suit challenging the application of the Proclamation to prevent entry to the U.S. at Ports of Entry as violating the individual plaintiffs' and other similarly situated aliens' alleged entitlement to seek asylum. Compl. ¶¶ 8-9, 12. The Complaint also challenges the disabling of the scheduling function of the CBP One application, which had previously allowed aliens to make appointments to present themselves at POEs for inspection. Compl. ¶¶ 3, 6–7, 12. Plaintiffs vaguely characterize these actions as an "Asylum Shutdown Policy;" however, the alleged policy is the implementation of the Proclamation at POEs through the CBP Guidance and is more properly characterized as "CBP Guidance." *Id.* ¶ 13. The Complaint further challenges the cancelation of existing CBP One appointments. *Id.* ¶¶ 6, 13.

On June 25, 2025, Plaintiffs moved for class certification (ECF No. 33), which the Court granted on March 30, 2026 (ECF No. 64). The Court certified a class of aliens

who are not physically present in the United States and had sought or will seek to present themselves at a land Port of Entry on the U.S.-Mexico border to seek asylum and were or will be prevented from accessing the asylum process, as well as a subclass of such aliens whose CBP One appointments were canceled. *See id.* at 16. It found that the class shared a "common denial of access to the asylum process." *Id.* at 10.

On September 11, 2025, Defendants moved to dismiss the Complaint on multiple grounds. ECF No. 45. Plaintiffs filed an opposition (ECF No. 54) and Defendants filed a reply. ECF No. 60.

On June 25, 2026, the United States Supreme Court issued its decision in *Al Otro Lado I*, 2026 WL 1825741. Therein, the Supreme Court held that "an alien who is standing in Mexico does not 'arriv[e] in the United States' [including under the asylum statute, § 1158(a)(1)] by attempting, and failing, to set foot in this country. An alien 'arrives in the United States' only when he crosses the border." *Id.* at *6. On June 26, 2026, this Court ordered supplemental briefing regarding the impact of the Supreme Court's decision on this case. ECF No. 69.

The Supreme Court's holding and interpretation of § 1158(a)(1) strengthens Defendants' arguments in support of their motion to dismiss because it demonstrates that the INA does not entitle the individual Plaintiffs and the class to apply for asylum. Plaintiffs also lack statutory standing because the *Al Otro Lado I* decision narrowed § 1158's zone of interests. The *Al Otro Lado I* decision bolsters Defendants' arguments that Plaintiffs' first, second, third, and sixth claims fail as a matter of law, because the Supreme Court has now clearly held that the asylum statute does not bestow any right to apply for asylum on those standing in Mexico and, thus, both the Proclamation and CBP Guidance are consistent with 8 U.S.C. §§ 1158 and 1182 as applied to the class.[1]

///

---

[1] At this time, Defendants are not raising new arguments for dismissal of Plaintiffs' fourth or fifth claims based on *Al Otra Lado I*. Instead, Defendants refer to their arguments for dismissal of the fourth and fifth claims as articulated within their motion to dismiss. *See* ECF Nos. 45 & 60.

## II. ARGUMENT

As Defendants have already argued, the Proclamation permits the President to deny physical entry to the United States to Plaintiffs and members of the class regardless of the geographical scope of the asylum statute. ECF No. 45 at 23–25. However, the Supreme Court's decision in *Al Otro Lado I* makes clear that the asylum statute does not bestow a right to apply for asylum on aliens outside the United States—including those who seek to cross the land border to enter the United States and present themselves at a POE. For this reason, Plaintiffs are not within the relevant statutory zone of interests and the *Al Otro Lado I* decision forecloses several of Plaintiffs' claims.

### A. *Al Otro Lado I* Forecloses the Organizations' Arguments that they Are Within the Relevant Zone of Interests.

Following the Supreme Court's decision in *Al Otro Lado I*, § 1158's zone of interests has necessarily narrowed. In their motion to dismiss, Defendants argued the Organizations "have no right of review if their 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" ECF No. 45, 18:9–11 (citing *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). The *Al Otro Lado I* decision only enhances Defendants' arguments by limiting § 1158's zone of interests to aliens within the United States. In the Complaint, AOL and HBA complain of a diversion of resources to Mexico. Specifically, AOL claims it diverted resources to support aliens "all in Mexico" (Compl. ¶ 150), diverted resources from the United States to Mexico (*Id.* at ¶ 151), developed a new risk assessment survey (*Id.*), and may see a decrease in funding due to fewer asylum applicants (*Id.* at ¶ 152). HBA claims to have experienced a similar resource diversion and decline in the number of Black migrants in the United States. *Id.* at ¶¶ 155–159. However, section 1158's purpose is to permit aliens to seek asylum when physically in the United States and it does not create entitlement to the asylum process until an alien crosses the border. *See Al Otro Lado I*, 2026 WL 1825741, at *11. It cannot reasonably be assumed that Congress intended to permit the

Organizations' suit in these circumstances because the interests of aliens outside of the United States are inconsistent with § 1158's implicit purpose and functioning. Similarly, it cannot reasonably be assumed that Congress intended to permit individuals outside of the United States to apply for asylum because the purpose of § 1158 is to permit individuals within the United States to apply for asylum. Thus, the Organizations and Individual Plaintiffs fall outside § 1158's zone of interests because their actions are outside the United States.

### B. *Al Otro Lado I* Mandates Dismissal of the First and Second Claims Because Aliens in Mexico are not Entitled to Apply for Asylum.

Plaintiffs' first and second claims fail because Defendants have not violated § 1158. Each of those claims are solely premised on the legal theory that the INA entitles aliens outside the United States to access the asylum process. Under § 1158, aliens are only entitled to seek asylum when they are "physically present in the United States" or "arrive[] in the United States." 8 U.S.C. § 1158(a)(1). In *Al Otro Lado I*, the Supreme Court interpreted "arrives in the United States" to require "cross[ing] the border." *Al Otro Lado I*, 2026 WL 1825741 at *6. Here, the class includes only those who have not crossed the border.[2]

#### 1. ***The First Claim Fails Because Defendants' Actions Do Not Violate § 1158.***

Plaintiffs are not entitled to access the asylum process while in Mexico. The sole basis for Plaintiffs' first claim is that the CBP Guidance unlawfully prevents aliens from accessing the asylum process. Compl. ¶¶ 171–172. Plaintiffs assert that § 1158 "codifies" a right for aliens to "come to land POEs and seek asylum" and that preventing access to POEs under the Proclamation and the CBP Guidance "violates § 1158." *Id.* at ¶¶ 170–172. In *Al Otro Lado I*, the Supreme Court made clear that only those who have

---

[2] As Plaintiffs explained, the application of the Proclamation to aliens who have crossed the border is not addressed in their Complaint and is the subject of separate litigation. Compl. ¶¶ 12 n.3. 103–105; *see also Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19 (D.D.C. 2025), *aff'd sub nom. Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026).

set foot in the United States are entitled to apply for asylum under § 1158(a)(1). *Al Otro Lado*, 2026 WL 1825741, at *1. As the Supreme Court held, "[t]he INA … neither entitles an alien standing in Mexico to apply for asylum nor requires an immigration officer to inspect him." Thus, the first claim fails because the actions cannot violate § 1158 when § 1158 creates no rights as to aliens standing in Mexico.

#### ***2. The Second Claim Fails because the CBP Guidance is Consistent with § 1158.***

Plaintiffs' second claim fails because the application of the Proclamation at POEs is consistent with § 1158. In the second claim, Plaintiffs contend that the CBP Guidance is contrary to law or in excess of statutory authority because it prevents aliens from accessing "the U.S. asylum process at POEs" in contravention of § 1158. Compl. ¶ 181. This claim is expressly contradicted by the Supreme Court's holding in *Al Otro Lado I* that § 1158 does not create any right of aliens in Mexico to be processed for asylum. *Al Otro Lado*, 2026 WL 1825741, at *6. Thus, Plaintiffs cannot state a claim that the CBP Guidance is contrary to law based on a purported inconsistency with § 1158, because an alien in Mexico is not entitled to apply for asylum under § 1158.

### C. The Third Claim Fails Because the CBP Guidance is not Arbitrary and Capricious.

Even if the Proclamation or resulting CBP Guidance were subject to review under 5 U.S.C. §701(a)(2), Plaintiffs fail to state an arbitrary and capricious claim under the Administrative Procedure Act (APA) because the CBP Guidance is on its face rational, based on the consideration of relevant factors, and within the President's authority. In determining whether a decision is arbitrary and capricious, "a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Manufacturer Association v. State Farm Auto Mutual Insurance Co.*, 463 U.S. 29, 43 (1983). This standard is narrow; courts examine for a "clear error of judgment" and "a court is not to substitute its judgment for that of the agency." *Id.* Indeed, courts

will "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (citing *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 286 (1974)).

Plaintiffs allege that the CBP Guidance is CBP's written guidance to implement the Proclamation. Compl. ¶ 103. Plaintiffs contend this guidance cuts off access to asylum by: (1) suspending entry of all aliens who fail to provide medical information, criminal history, and background information; (2) exempting United States citizens, lawful permanent residents, and individuals with valid entry documents from the policy; and (3) prohibiting aliens from crossing the international boundary even if they claim or manifest fear. *Id.* at ¶ 103. Defendants' analysis will focus on elements one and three as the second element of the policy does not apply to Plaintiffs' claims.

Post-*Al Otro Lado I*, Plaintiffs' arbitrary and capricious claim under the APA fails because the alleged policy is rational and consistent with §§ 1158 and 1182. In enacting § 1158, Congress intended that aliens seeking asylum do so within the United States. *Al Otro Lado*, 2026 WL 1825741, at *10 ("Nothing in the text of § 1158(a)(1) or §§ 1225(a)(1) and (a)(3) manifests an unmistakable congressional intent to require that aliens be inspected and allowed to apply for asylum while they are still outside the United States."). The CBP Guidance was based on relevant factors because it was created to memorialize the Proclamation and the Proclamation delineates its bases. Some of the President's concerns addressed in the Proclamation involved an overwhelmed system and significant threats to public health, safety, and national security. 90 Fed. Reg. 8333–34. The CBP Guidance is also rational because it essentially memorializes the Proclamation which was created under the President's § 1182(f) authority and is consistent with §§ 1158 and 1182.

Moreover, the CBP's path in memorializing the alleged CBP Guidance is reasonably discernable, even assuming the truth of Plaintiffs' allegations. First, § 1158 limits the ability to apply for asylum to those aliens within the United States. *Al Otro Lado*, 2026 WL 1825741, at *10. Second, the President issued the Proclamation

preventing the entry of those who may be seeking asylum access consistent with § 1158 and §§ 1182(f) and 1185(a). Third, CBP memorialized section 3 of the Proclamation by issuing written guidance—which Plaintiffs contend is the alleged CBP Guidance. *Id.* at ¶ 103. The path to the decision to implement the CBP Guidance is readily discernable as it originated from the Proclamation. *See Colorado Interstate Gas Co. v. Federal Power Commission*, 324 U.S. 581, 595 (1945) (declining to review orders by the Federal Power Commission where the path it followed was discernable, even if the findings were summary and left much to be desired). Plaintiffs' APA claim fails because CBP's path in creating the CBP Guidance is readily discernable as the policy memorializes the President's Proclamation, which is rational, based on relevant factors, and within the President's authority under § 1182(f).

**D. The Sixth Claim Fails Because the Proclamation is not *Ultra Vires*.**

Even if the Proclamation was not encompassed by the President's sovereign powers, the Proclamation and resulting CBP Guidance are not *ultra vires*. As argued in Defendants' motion to dismiss, an officer only acts *ultra vires* "when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 n.11 (1984) (citation omitted). An *ultra vires* claim requires a "lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949). Here, Plaintiffs' legal theory as set forth in the Complaint is that the Proclamation and CBP Guidance exceed the President's authority because they conflict with the asylum statute. Yet the application of the Proclamation to prevent the entry to U.S. territory of those seeking to enter at a POE is consistent with § 1158, and this legal theory cannot state an *ultra vires* claim.

The Proclamation is within the President's authority under 8 U.S.C. § 1182(f). The President may "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f). Similarly, the CBP Guidance rests upon the

President's authority as sovereign as the alleged policy was implemented as agency guidance for the Proclamation. Compl. ¶ 103. With both statutory and sovereign authority, it cannot be said that the Proclamation and CBP Guidance are *ultra vires*.

## III. CONCLUSION

For these reasons, as well as those stated in Defendants' Motion to dismiss, the Court should dismiss the Complaint with prejudice.[3]

DATED: July 28, 2026

Respectfully submitted,

ADAM GORDON
United States Attorney

*s/ Glen F. Dorgan*
GLEN F. DORGAN
Assistant United States Attorney
Attorney for Defendants
United States of America

[3] To the extent Plaintiffs seek leave to amend the Complaint, Defendants respectfully assert that such request should be denied.