UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, INC., et al.,

Plaintiffs,

v.

DONALD J. TRUMP, President of the United States, in his official capacity, et al.,

Defendants.

Case No.: 3:25-cv-01501-RBM-DDL

**ORDER DISMISSING PLAINTIFFS' COMPLAINT WITH LEAVE TO AMEND**

**[Docs. 45, 57]**

Individual Plaintiffs Maria Doe, Jessica Doe, Fernando Doe, Ali Doe, Eduardo Doe, Jean Doe, Rous Doe, Diana Doe, Anahi Doe, and Dragon Doe ("Individual Plaintiffs") and Plaintiffs Al Otro Lado, Inc. and Haitian Bridge Alliance ("Organizational Plaintiffs") ("collectively "Plaintiffs") brought this class action to challenge Proclamation No. 10888, 90 Fed. Reg. 8333 (Jan. 20, 2025) ("Proclamation") that Plaintiffs allege prevents noncitizens from accessing the U.S. asylum process provided for in 8 U.S.C. § 1158(a)(1), at ports of entry ("POE") along the U.S.-Mexico border. (Compl. [Doc. 1] ¶¶ 2, 5–6, 8–14.[1]) The action also challenges the January 20, 2025 cancellation of all pending CBP One

[1] The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for all other cites to the record.

appointments and disabling of the scheduling function in the mobile application that provided the only avenue for most noncitizens to seek asylum at a POE on the U.S.-Mexico border. (*Id.* ¶¶ 3, 6–7, 13–14.)

Defendants filed a Motion to Dismiss. (Doc. 45.) Plaintiffs filed an Opposition. (Doc. 54.[2]) Defendants filed a Reply. (Doc. 60.) When the United States Supreme Court issued its decision in *Mullin v. Al Otro Lado*, 609 U.S. __, 146 S. Ct. 2079 (2026) ("*Al Otro Lado I"*) on June 25, 2026, the Court ordered the parties to file supplemental briefing addressing its impact on this case. (Doc. 69.) Defendants' Supplemental Brief was filed on July 28, 2026 (Doc. 72) and Plaintiff's Supplemental Brief was filed on August 28, 2026 (Doc. 75).

## I. BACKGROUND

### A. Allegations of the Complaint

The Complaint alleges that on January 20, 2025, Defendants cancelled approximately 30,000 CBP One appointments including some for Individual Plaintiffs to present themselves at a POE to access the U.S. asylum process and issued the Proclamation suspending access to asylum at the U.S.-Mexico border in violation of 8 U.S.C. § 1158(a)(1). (Compl. ¶¶ 1–4, 6–13, 16, 88, 94.)

The Complaint asserts that because CBP One was the only way to access the asylum process at the U.S.-Mexico border from May 2023 through January 20, 2025 noncitizens relied on access through it as they waited in Mexico for their appointment or tried to get an appointment. (*Id.* ¶¶ 3–5, 12, 83, 94, 203, 206.) The January 20, 2025 cancellations and disabling of the scheduling functionality of CBP One eliminated the only way for those seeking asylum at the U.S.-Mexico border to access the asylum process. (*Id.* ¶¶ 70–80, 88, 90–95.)

---

[2] The Court **GRANTS** the Consent Motion of Constitutional Accountability Center for Leave to File Amicus Curiae Brief in Support of Plaintiff's Opposition to the Motion to Dismiss. (Doc. 57.)

The Proclamation followed the same day. (*Id.* ¶¶ 96–102.) It states that until the President "issue[s] a finding that the invasion at the southern border has ceased," the "entry into the United States of such aliens, [i.e. 'aliens engaged in the invasion across the southern border'] be suspended." 90 Fed. Reg. 8335 (Jan. 20, 2025). It also precludes those without "sufficient medical information and reliable criminal history and background information" entry into the United States and restricts their access to asylum. *Id.* A February 28, 2025 implementation memorandum from the CBP Office of Field Operations ("OFO Implementation") that followed indicates that "[a]liens subject to the Proclamation shall not be permitted to cross the international border." (Doc. 1-2 at 5; Compl. ¶¶ 103–106.)[3] The OFO explicitly states that "[a]n undocumented alien who claims or manifests a fear at the international border line to CBP personnel is not excepted from the Proclamation['s]" suspension of entry. (Doc. 1-2 at 5.) Plaintiffs allege that the cancellation of all CBP One appointments, the Proclamation, and the OFO Implementation (collectively referred to as the "Asylum Shutdown Policy") has effectively shut down asylum access at the U.S.-Mexico border in violation of § 1158. (Compl. ¶ 11 ("restrict[ing] noncitizens who fail to provide the aforementioned medical, criminal, and background information from invoking the provisions of the Immigration and Nationality ("INA") that would permit their continued presence in the United States—including 8 U.S.C. § 1158"); ¶ 13 (asserting Defendants' "have a statutory obligation to provide access to the U.S. asylum process").)

Plaintiffs assert that the cancellation of all CBP One appointments, the lack of any other means to access the asylum process, and the prohibition on any noncitizen being permitted to physically enter the United States from Mexico, including those seeking

---

[3] The previous bullet point of the Memorandum defined those not subject to the Proclamation as "U.S. citizens (USCs) and Lawful Permanent Residents (LPRs); Unaccompanied alien children (UAC); and Aliens with valid entry documents or authorizations (e.g. visa, ESTA, or who otherwise provide sufficient medical information or reliable criminal history information)." (Doc. 1-2 at 5.)

asylum based on fear, has resulted in the denial of access to the asylum process provided by law in 8 U.S.C. § 1158(a)(1). (*Id.* ¶¶ 1–2, 11–14 (introduction); *id.* ¶¶ 45–47, 51–52, 54–55 (asylum statutory protections); *id.* ¶¶ 56–58, 60, 63 (suspense of entry in 8 U.S.C § 1182(f) violates INA); *id.* ¶¶ 98, 102 (Proclamation restricts § 1158); ¶¶ 170–76, 178–182, 184, 191, 207, 211.)

The Complaint asserts six causes of action: (1) Violation of the Immigration and Nationality Act, 8 U.S.C. § 1158; (2) Violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C) (Contrary to Law); (3) Violation of the APA, 5 U.S.C. § 706(2)(A) (Arbitrary & Capricious); (4) Agency Action Without Observance of Procedures Required by Law, APA, 5 U.S.C. § 553, 706(2)(D); (5) APA, 5 U.S.C. § 706(2)(A) (Arbitrary & Capricious);[4] and (6) Ultra Vires. (Compl. ¶¶ 169–212.)

## II. DISCUSSION

### A. Briefing on the Motion to Dismiss Referencing *Al Otro Lado I*

Plaintiffs acknowledged in their Opposition to the Motion to Dismiss that the Supreme Court had granted certiorari to hear *Al Otro Lado I*. (Doc. 54 at 34 n.22 ("The recent grant of certiorari in a similarly named but substantively distinct case, will not impact the resolution of this motion.") Defendants, in reiterating their argument that the Asylum Shutdown Policy did not conflict with § 1158(a)(1), explained that "if the Supreme Court decides that [an alien stopped on the Mexican side of the U.S.-Mexico border] is not covered by § 1158(a)(1), Plaintiffs' claims that the [Asylum Shutdown Policy] are inconsistent with the asylum statute cannot possibly succeed." (Doc. 60 at 10.)

On June 25, 2026, the Supreme Court issued its decision in *Al Otro Lado I*. The Court ordered supplemental briefing on the impact of *Al Otro Lado I* on this case. (Doc. 69.) After an extension of the briefing deadlines at the parties' request (Docs. 70–71), Defendants filed their supplemental brief on July 28, 2026 (Doc. 72) and Plaintiffs filed

[4] The fourth and fifth causes of action are brought specifically based on the cancellation of CBP One appointments.

their supplemental brief on August 28, 2026 (Doc. 75).

**B. Supplemental Briefing**

**1. Defendants' Supplemental Briefing**

Per the Court's supplemental briefing order, Defendants filed their supplemental brief first. (Doc. 72.) Defendants accurately note that "[m]any of Plaintiffs' claims in this case are expressly premised, in whole or in part, on the argument that the asylum statute [§ 1158] creates a 'statutory obligation' to provide access to the U.S. asylum process to [noncitizens] in Mexico who seek to cross the border as a [POE]." (*Id.* at 1 (citing Compl. ¶¶ 2, 13, 46–47, 58, 63–64, 170–72, 181–82.) Defendants assert that *Al Otro Lado I* "rejected this premise" and "held that 'an alien who is standing in Mexico does not arriv[e] in the United States' [including under the asylum statute, § 1158(a)(1)] by attempting, and failing to set foot in this country." (*Id.* at 2 (quoting *Al Otro Lado I*, 146 S. Ct. at 2090) (alteration in brief).) Defendants argue the claims premised "on a purported entitlement to access the asylum process fail to state a claim and that the Organizational Plaintiffs lack statutory standing." (*Id.*) Defendants argue the Supreme Court's interpretation of § 1158(a)(1) demonstrates the INA does not entitle the Individual Plaintiffs to apply for asylum and Plaintiffs' "first, second, third, and sixth claims fail as a matter of law, because the Supreme Court has now clearly held that the asylum statute does not bestow any right to apply for asylum on those standing in Mexico," making the Asylum Shutdown Policy "consistent with 8 U.S.C. §§ 1158 and 1182." (*Id.* at 3.)

Defendants argue that after *Al Otro Lado I*, the Organizational Plaintiffs are not within the relevant zone of interests for purposes of standing. (*Id.* at 4–5.) Essentially, Defendants assert that because *Al Otro Lado I* narrowed § 1158 to only those physically in the United States, "§ 1158's zone of interest has necessarily narrowed." (*Id.* at 4.) Because the Organizational Plaintiffs' actions are outside the United States, they fall outside § 1158's zone of interests. (*Id.* at 5.)

///

///

Defendants argue Plaintiffs first claim (Violation of the INA, 8 U.S.C. § 1158) and second claim (Violation of the APA, 5 U.S.C. § 706(2)(A), (C), Contrary to Law) must be dismissed because *Al Otro Lado I* "interpreted 'arrives in the United States' [in § 1158(a)(1)] to require 'cross[ing] the border.'" (*Id.* at 5.) This means Plaintiffs cannot bring a claim based on the Asylum Shutdown Policy violating § 1158 because "§ 1158 does not create any right of [noncitizens] in Mexico to be processed for asylum." (*Id.* at 6.) Defendants also assert Plaintiffs' third claim (Violation of the APA, 5 U.S.C. § 706(2)(A), Arbitrary & Capricious) must also be dismissed because after *Al Otro Lado I* the Asylum Shutdown Policy "is rational and consistent with §§ 1158 and 1182." (*Id.* at 6–9.) Similarly, Defendants argue the sixth claim (Ultra Vires Action) must also fails because the Asylum Shutdown Policy is consistent with, rather than in conflict with, § 1158. (*Id.* at 8.)

**2. Plaintiffs' Supplemental Briefing**

Plaintiffs argue *Al Otro Lado I* did not impact their zone of interests because the case "did not address the zone of interests test at all." (Doc. 75 at 11–12.) Plaintiffs also assert that the relevant statute for assessing their zone of interests for this case should be § 1182(f) rather than § 1158 because "Plaintiffs' remaining claims turn primarily on the limits of the authority § 1182(f) confers on the Executive branch." (*Id.* at 14.)

Plaintiffs concede *Al Otro Lado I* forecloses their first claim. As to Plaintiffs' second and sixth claims, Plaintiffs argue Defendants only addressed the "not in accordance with law" portion of these claims and since they can both be split or parsed to dismiss the "not in accordance with law" portions that rely on § 1158(a)(1), Plaintiffs should be allowed to proceed with them on a "not authorized by any source of law" or "in excess of statutory authority" basis. (*Id.* at 7.) Plaintiffs again argue that because *Al Otro Lado I* was not an arbitrary and capricious case it does not impact the third claim. Plaintiffs also argue *Al Otro Lado I* does not make the Asylum Shutdown Policy any more reasonable. (*Id.* at 9–10.)

///

### 3. Complaint's Reliance on § 1158

Despite Plaintiffs' attempts to downplay the significance of § 1158 to their claims, as currently pled, it is the foundation of the case. The first paragraph of the Complaint identifies § 1158(a)(1) as "enshrining the United States' commitment to provide protection to individuals fleeing persecution" (Compl. ¶ 1) and then asserts "[t]his case challenges actions by Defendants that override the plain text of 8 U.S.C. § 1158(a)(1) by unlawfully shutting down access to asylum at ports of entry along the U.S.-Mexico border." (*Id.* ¶ 2.) Similarly, the first paragraphs of the Legal Background section of the Complaint identify § 1158(a)(1) as "mak[ing] the right to apply for asylum available to noncitizens" and "affording this right to noncitizens who are not yet physically present in the United States." (*Id.* ¶¶ 46–47.) The section concluded "[i]n sum, 8 U.S.C. § 1158(a)(1) requires access to POEs for people seeking asylum and mandates that all such individuals be given access to a process to seek asylum." (*Id.* ¶ 55.) In short, § 1158(a)(1) is the primary right Plaintiffs have argued the Asylum Shutdown Policy violates. However, as the parties' briefing acknowledges, post-Al Otro Lado I, 1158 provides noncitizens no right to access the asylum process in Mexico. *Al Otro Lado I*, 146 S. Ct. at 2091.

Plaintiffs also argue the Asylum Shutdown Policy exceeds the scope of § 1182(f)'s power, but even that is also alleged to be a violation of § 1158. (*Id.* ¶ 58 ("Section [1182(f)] does not authorize the President to violate or abrogate other provisions of the INA, such as § 1158."); *id.* ¶ 63 (Section 1182(f) "does not encompass the power to suspend the operation of § 1158, which gives noncitizens the right to apply for asylum.").) Paragraph after paragraph describes how the Asylum Shutdown Policy deprives Plaintiffs access to the U.S. asylum process provided for in § 1158. (*Id.* ¶¶ 1–2, 11–14, 45–47, 51–52, 54–55, 56–58, 60, 63, 98, 102, 170–76, 178–182, 184, 191, 207, 211.)

Plaintiffs wisely concede that their first claim and portions of the second and sixth claims are foreclosed. *Al Otro Lado I* has indisputably impacted the basic underpinning of this case—§ 1158. Given these claims' direct reliance on § 1158 as entitling noncitizens outside the United States access to the asylum process, dismissal of these claims or portions

of claims is warranted. However, this still leaves pleading and briefing issues. Defendants have not had an opportunity to address Plaintiffs' argument that two of the claims should be parsed and a portion allowed to proceed. Additionally, parts of the Complaint—with their heavy reliance on § 1158 providing asylum access to those outside the United States—are essentially invalidated in light of *Al Otro Lado I*. 146 S. Ct. at 2090. This leaves the Court attempting to account for or disregard a fairly substantial portion of the allegations of Complaint in assessing whether Plaintiffs claims are sufficiently pled to survive dismissal under Ruled 12(b)(6). Additionally, because the Motion to Dismiss was briefed before *Al Otro Lado I* was decided, the Court is attempting to make this assessment with outdated briefing.

Given the Complaint's reliance on § 1158 and the impact of *Al Otro Lado I* on § 1158, the Court **DISMISSES** the Complaint with leave amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## III. CONCLUSION

Having considered the Complaint, the parties' initial briefing, the United States Supreme Court's decision in *Al Otro Lado I*, and the parties' supplemental briefing, the Court finds that Plaintiffs must file an amended complaint. Accordingly, the Complaint is **DISMISSED** with leave to file an amended complaint on or before **October 28, 2026** and Defendants' Motion (Doc. 45) is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: September 30, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE